## THE OCEAN INSURANCE COMPANY *against* CARRINGTON and another.

*A.* applied to an insurance company, enquiring "at what premium" their office would " take a risk *on* 26 *horses and* 20 *oxen,*" for a certain voyage. The office replied, " *at* 15 *per cent.* ; but no partial loss to be paid under 10 *per cent.* nor any loss on account of sickness." *A.,* in reply, said, "I accept your terms, and wish a policy filled, *viz:*

on 26 horses, valued at  2200
and on 20 oxen, valued at  800,
_____

$3000 at 15 *per cent.* $450 ;"

and sent a note for the premium, requesting a policy, by return mail. The office received the note, and transmitted, by return mail, a policy for 3000 dollars, " on 46 head of horses and oxen, valued at 3000 dollars." Held, that such policy was not conformable to the terms on which *A.* accepted the proposition made by the office, and that the premium note, therefore, was not recoverable.

New-Haven,
July,
1820.

Ocean Insu-
rance Co.
v.
Carrington.

This was an action of *assumpsit* on a promissory note, tried at *New-Haven, January* term, 1820, before *Peters*, J.

The note was given to secure the premium on a policy of insurance on certain stock, owned by the defendants, on the deck of the brig *Gleaner*, from *Saybrook* to the *West-Indies*. The defendants refused to accept the policy, on the ground that it was not made in conformity to their application, nor to any terms mutually agreed upon, by the parties; and on the same ground they rested their defence in this action. On the 19th of *January*, 1819, the defendants addressed the following letter to *Truman Woodward*, secretary of *The Ocean Insurance Company* : " Sir, At what premium will your office take a risk on 26 horses and 20 oxen, on board the brig *Glea-ner*, *Henry Bowers*, master, from *Saybrook* to one or more ports in the *West-Indies*, from windward to leeward, not to the leeward of *Porto Rico ?* The *Gleaner* sailed from *Saybrook, December* 3rd, and was spoken *December* 7th, after the *Satur-day-night* gale, all well, as we supposed." On the 21st of *January*, the plaintiffs, by their secretary, returned the follow-ing answer : " Your favour of the 19th was received yester-day, but too late to be acted upon until this morning. The office will take the risk you propose, at 15 *per cent.* or 10 *per cent.* with a warranty that the stock was safe on the 7th of *De-cember* last, but no partial loss to be paid under 10 *per cent.*, nor any loss on account of sickness." On the 22d of *Janua-ry*, the defendants replied as follows : " We have received yours of 21st inst. and accept your terms for the stock in the *Gleaner*, and wish a policy filled, *viz.*

on 26 horses, valued at   $2200     at 15 *per cent.* $450
and on 20 oxen, valued at     800                policy    1

                              ——————                    ————
                              $3000                    $451

Enclosed is a note for the premium. Please to send poli-cy to us, by mail, this evening." On the next day, the plaintiffs acknowledged the receipt of the premium note, and forward-ed to the defendants a policy for " 3000 dollars on stock on the deck of the brig *Gleaner*, from *Saybrook* to one or more ports in the *West-Indies*, from windward to leeward, not to leeward of *Porto Rico*." In the margin " Sum insured 3000 dollars. 46 head of horses and oxen, valued at 3000 dol-lars." It contained a stipulation that no partial loss should be paid under 10 *per cent.*, nor any loss on account of sickness. This policy the defendants refused to accept, claim-

ing that it was not filled agreeably to their application, or the terms of their acceptance, and immediately returned it to the plaintiffs, requesting them to give up the note. Upon these facts the judge instructed the jury, that the policy was not made in conformity to the application of the defendants, nor in conformity to the terms given by the plaintiffs, and accepted by the defendants; and directed them, therefore, to return a verdict for the defendants; which was accordingly done. The plaintiffs thereupon moved for a new trial, on the ground of a misdirection; and the judge reserved the motion.

*New-Haven,*
July,
1820.

Ocean Insurance Co.
*v.*
Carrington.

*Baldwin* and *N. Smith*, in support of the motion, contended, that the charge was incorrect, on the following grounds.

1. The contract shewn by the correspondence is for insurance, by a *valued* policy, on stock, valued at 3000 dollars, not subject to partial loss under 10 *per cent*. In the first place, the defendants applied for insurance, generally, on 26 horses and 20 oxen, without valuation, as one entire risk. Then the terms were given, by the plaintiffs, *viz*. 15 *per cent*. premium, and no loss under 10 *per cent*. The negociation was closed, by an *acceptance*, on the part of the defendants, accompanied with a wish for a valued policy, and an invoice to shew the value.

2. The policy made by the plaintiffs, and transmitted to the defendants, was in conformity to the terms so given and accepted: It was a valued policy on 46 head of horses and oxen, valued at 3000 dollars, subject to no partial loss under 10 *per. cent*.

3. The 10 *per cent*. is, by the terms of the contract, to extend to the whole. Of course, the insured could derive no benefit from a separate valuation in the policy; or from inserting the number of each kind of stock; a valued policy being always open to adjust a partial loss. The result would be the same, in either case; applying the 10 *per cent*. to the whole sum of 3000 dollars. *Park*, 163. 1 *Marsh*. 203.

4. No application was made, and no terms were given, for *separate* insurance; which would reduce the 10 *per cent*. to less than 4 *per cent*. on oxen, and 8 on horses. For this additional risk no premium was offered or taken. Separate insurance is not usual. It may be made; but in that case, it must clearly appear to be the intention of the parties. A separate valuation alone will not have that effect. There must be ap-

*New-Haven,*
July,
1820.

Ocean Insu-
rance Co.
*v.*
Carrington.

propriate words for that purpose ; such as " separate inter-
ests, separately insured ;" otherwise, it will be taken to be
an entire insurance on the aggregate amount.   *Stevens on
Average* 210.

5. The risk commenced from notice of acceptance.   The
execution of the policy is matter of form, and may be compel-
led in chancery.   Suppose a loss had happened after accept-
ance of the terms, and before the policy was made ;   would
not the office be liable for a total loss ; or for a partial loss, if
it amounted to 10 *per cent.* on the value ; but not, if it amount-
ed to 10 *per cent.* on the oxen, or horses, separately ?

6.   The risk having commenced, the assured cannot avoid
the premium, by refusing to accept the policy.   If they were
entitled to separate insurance, chancery would compel the
alteration, or a court of law would give redress, on proof of the
facts.

*Staples* and *Hotchkiss,* contra, insisted, That the defendants
were not bound to accept the policy, because it was not con-
formable to their directions, and is less valuable to them than
the one they did direct.   In support of this proposition, they
suggested the following considerations.

1. In case of partial loss, it could not be so easily and equi-
tably adjusted.

2. In case of partial loss, the average must amount to 10 *per
cent.* on the whole sum insured ; whereas in case of a separate
valuation, the partial loss need not have exceeded 10 *per cent.*
on the separate value of each kind.

3. The minds of the parties *never met* on the terms of the
policy.   The defendants, in their first letter, made no pro-
positions, but asked terms of the plaintiffs, on a statement of
facts.   The plaintiffs, in their answer, state certain terms,
which they were willing to give.   The defendants then ex-
pressed their acceptance of those terms, in connexion with
certain other terms, which they proposed.   These terms re-
quired *a separate valuation* of the stock ; with regard to which
the plaintiffs had been silent.   Thus far, there had been no
agreement, on the point of separate valuation.   In this state
of things, the plaintiffs sent a policy, without a separate valu-
ation ; and the defendants returned it, because it was not such
an one as they had proposed to receive.   The expression in
the defendants letter, " we accept your terms," must be ta-

ken in connexion with the qualifications immediately subjoined, *viz.* that *the policy should be filled on 26 horses, valued at 2200 dollars,* and *on 20 oxen, valued at 800 dollars.*

A court of chancery would not interfere in this case. It will never interpose its authority, in cases of insurance, except as ancillary to a court of law. 2 *Marsh. Ins.* 679. (*Condy's* ed.) But if the parties have made *no agreement;* if their minds have *never met* on the terms of the policy; there is no foundation for any proceeding in law or equity.

*New-Haven,*
July,
1820.

Ocean Insurance Co.
*v.*
Carrington.

Hosmer, Ch. J. This is an action on a promissory note, given for the premium on a policy of insurance. The plaintiffs transmitted to the defendants a policy; and whether it met their request, is the sole question.

On the 19th of *January,* 1819, the defendants applied, by letter, to the *Ocean Insurance Company,* requesting information, at what premium they would take a specified risk "on 26 horses and 20 oxen on board the brig *Gleaner.*" The office replied, on the 21st of *January,* that they would assume the proposed risk at 15 *per cent.,* or at 10 *per cent.,* with a warranty that the stock were safe on the 7th of *December,* but that no partial loss would be paid under 10 *per cent.* Thus far, there is no pretence that there was any agreement arising out of this preliminary correspondence. On the 22d of *January,* the defendants again wrote to the plaintiffs; and on the construction of this letter the whole controversy depends. It consisted of a single sentence, without a stop from the beginning to the end, and was expressed in the following words: "We have received yours of the 21st instant, and accept your terms for the stock in the *Gleaner,* and wish a policy filled, *viz.*

on 26 horses, valued at $2200
and on 20 oxen, valued at   $800
_____
$3000."

The plaintiffs insist, that this letter authorized them to underwrite a policy on the stock at the valuation of 3000 dollars; while the defendants contend, that nothing short of a policy distinctly valuing the horses at 2200 dollars, and the oxen at 800 dollars, would meet their proposal. This letter accepted the terms of insurance proposed, *i. e.* 15 *per cent.* premium, and no partial loss under 10 *per cent.;* but did not perfect the contemplated contract. The two first letters were conver-

46

New-Haven,
July,
1820.

Ocean Insurance Co.
v.
Carrington.

sant about an *open* policy, while that of the 22d requested a *valued* policy. This was a *new* proposal, which the defendants might presume the underwriters would accept, but they could not know it. The office had assumed no such obligation. It is clear, therefore, that the acceptance of the defendants, by their letter of the 22d of *January*, was of the terms only, while they proposed *new matter*, on their part; and as the office had not agreed to underwrite a *valued* policy, neither had the defendants agreed to receive an *open* policy. The minds of the parties had not met; and it would be placing an unjustifiable stress on the first words in the letter, "we accept," to consider this expression as concluding the contract. Every word, if possible, should operate in some shape or other; for words ought to be understood with effect; and the construction must be on the whole letter, and not on a disjointed part. 2 *Black. Comm.* 379.

The plaintiffs, by the valued policy, which they transmitted, recognized the new proposal made them, by the defendants, in part; and if they had strictly attended to their import, the same words would have convinced them, that a separate valuation of the horses and oxen was proposed. The defendants designated the mode in which they would have it done. "We wish," say they, "a policy filled, *viz.* on 26 horses, valued at 2200 dollars, and on 20 oxen, valued at 800 dollars." Had it been their intention to have requested a policy on the aggregate value of the horses and oxen, they would not have specified the value of each separately, and then have given the total amount; but they would have said, "fill the policy on 26 horses and 20 oxen, valued at 3000 dollars." In the manner of expression, there is something to assist in developing the defendants' intention. They requested the policy to be *filled*, that is, to be *written on its face*, with a valuation of the horses, at a specified sum, and of the oxen, at another specified sum. The policy transmitted was not conformable to the proposition; and there having been no union of minds between the parties, there has been, of consequence, no contract; and the note in suit is not recoverable.

The principle on which a contract becomes binding, is stated, with great precision, in *Eliason* v. *Henshaw*, 4 *Wheat. Rep.* 225. 228. "It is an undeniable principle of the law of contracts," (said the court,) "that an offer of a bargain, by one person, to another, imposes no obligation upon the for-

mer, until it is accepted by the latter, according to the terms in which the offer was made.    Any qualification of, or departure from, those terms, invalidates the offer, unless the same be agreed to, by the person who made it.    Until the terms of the agreement have received the assent of the parties, the negociation is open, and imposes no obligation on either." In the application of this principle, the court adjudged, that an offer to purchase flour, accompanied with a request to write an answer to be delivered at *Harper's ferry*, was not accepted so as to create an obligation, by writing a letter agreeing to the propositions, directed to *Georgetown*, where the defendant received it.    The reason assigned was, that the plaintiffs in error had a right to dictate the terms on which they would receive the flour.    So, in the case before us, the office had a right to dictate their terms ; and the least material variation from the proposition, on either side, shews that no contract was ever made.

New-Haven, July, 1820.

Ocean Insurance Co.  
*v.*  
Carrington.

To the construction which I have adopted, several objections have been made.

1. It has been said, that the request in the defendants' letter of the 22d *January* for a policy " on 26 horses valued at 2200 dollars, and on 20 oxen valued at 800 dollars," was merely an invoice ; and that nothing was meant by it, but to give a catalogue of the property to be insured.    This is a mere *gratis dictum*.    The expression had neither the form, purpose, nor phraseology of an invoice ; but was a direction to the underwriters as to the manner of filling up the policy.

2. It has been urged, that the defendants did not apply for a valued policy, but merely wished it.    This adherence to the *letter*, and disregard to the *spirit*, of the request, it almost requires an apology to answer.    Between two proposals, the one *requesting*, and the other *wishing*, a valued policy, there is no essential difference.    A compliance with the intimation, in either case, is indispensible to the formation of a contract.

3. The plaintiffs have insisted, that the premium on a policy, where the property is distinctly valued, surmounts the one demanded on an open policy ; and from this they presume, that inasmuch as the defendants accepted the terms proposed for the underwriting of an open policy, they assented to one of the latter description.    I will not say, that a presumption of this nature is destitute of all probability ; but presumptions stand only until the contrary appears.    Now, to my mind, it is

*New-Haven,*
*July,*
*1820.*

Ocean Insu-
rance Co.
*v.*
Carrington.

clear, that the defendants, by their letter of the 22d of *Janua-ry*, did not agree to accept an open policy, but made a counter proposition, in language so definite and intelligible, as not to be countervailed by the preceding inference. It is very probable, that they hoped the plaintiffs would insure the horses and oxen at a separate valuation, upon the premium they had proposed. The transmitting the note, by way of anticipation, proves nothing, except that they had a strong confidence in the acceptance of their proposition, and in the integrity of the office.

4. It has been contended, that to give the benefit of a distinct valuation of property, in a policy, the expression should be " to pay an average as if on separate interests separately insured." This proposition is both incorrect, and irrelevant. The question ever is, against what losses have the insurers agreed to indemnify. *Stevens on Average*, 209–11. And the answer to this is not dependent at all on any technical phraseology, but on the spirit of the instrument. Besides, if the agreement, on the part of the underwriters, is to value the property distinctly, it behoves them to make out the policy in a proper manner, if they would entitle themselves to the premium.

5. The plaintiffs have insisted, that in the event of a partial loss, the insured would derive no benefit from a distinct and separate valuation in the policy; in other words, as all policies are open to adjust a particular loss, that the result in every case must be the same. Nothing can be more incorrect. In the event of an aggregate valuation, the partial loss is compared with the aggregate sum; but in case of a separate valuation of the property insured, the proportion of loss is estimated on the separate value. For example, if the horses and oxen were valued conjointly at 3000 dollars, the underwriter having stipulated to pay no partial loss under 10 *per cent.* the loss must equal 300 dollars to be embraced within the policy; but if the oxen were separately valued at 800 dollars, a loss on the oxen to the amount of 80 dollars only, would subject the underwriter.

6. It has, likewise, been said, that the risk having commenced, chancery would compel the plaintiffs to rectify the policy. The assertion has no bearing on the point of controversy. An agreement having been made, and the error consisting in reducing it to writing incorrectly, the mistake, undoubtedly,

may be set right. But in this case, *the parties never did agree;* and this is the gist of the defence.

In every view, I have been able to take of the subject before the court, the plaintiffs ought to have returned the premium note, according to the defendants' request, and thus have terminated a correspondence, in which the parties could not agree. I would not, therefore, advise a new trial.

PETERS and BRAINARD, Js. were of the same opinion.

BRISTOL, J. The note in question was transmitted, by the defendants, to the *Ocean Insurance Company*, as the stipulated premium upon a policy of insurance, which was made out by the company, and sent to the defendants, by the return mail;—and the question presented in the case, is, whether this policy was made in conformity to the contract between the parties? If the policy was conformable to the contract, the defendants have no right to refuse it, or avoid the premium note.

There is no room for dispute as to what the policy in fact was. The instrument is before the court. It was a valued policy, for the sum of 3000 dollars on *stock*, on the deck of the brig *Gleaner*, from *Saybrook* to one or more ports in the *West-Indies*, from *windward* to *leeward*, not to leeward of *Porto Rico*, "at a premium of 15 *per cent.* and no partial loss under 10 *per cent.*; and no loss on account of sickness." In the margin of the policy, the contract is thus expressed; "sum insured $3000, 46 head of horses and oxen valued at $3,000."

Having seen what the policy was, the only remaining inquiry is, what was the contract between the parties? Have the defendants got the policy, which they contracted for, and which the plaintiffs were bound to furnish?

It is claimed by the defendants, that the horses were to be separately insured; and the oxen were likewise to be separately insured; so that in case of a loss amounting to 10 *per cent.* on the value of *either*, the assured would be entitled to recover of the insurers; whereas, upon the policy in question, a loss equal to 10 *per cent.* on the entire valuation of both horses and oxen must be sustained, in order to authorize a recovery.

The question, then, is resolved into this. Did the company agree to take a separate risk upon the horses, and another

*New-Haven,*
July,
1820.

Ocean Insurance Co.
*v.*
Carrington.

*New-Haven,*
*July,*
*1820.*

*Ocean Insu-*
*rance Co.*
*v.*
*Carrington*

upon the oxen? Or, was the agreement to take *one risk* on both horses and oxen, as a single, undivisible subject of insurance? In my opinion, the latter was clearly the contract between the parties; and had not intelligence of the safety of the vessel, reached the defendants between the time when they enclosed by mail their premium note and the reception of the policy, this defence would never have been made. On the contrary, had intelligence of a loss reached the defendants, after they requested the policy to be made out, and before it was received, they would not only have been *able in law*, but also *willing in fact*, to enforce the policy against the insurers.

A brief notice only of the correspondence is necessary to shew, that *one single risk* on horses and oxen, and not a separate insurance on each, was in the contemplation of the parties.

By the first letter of *January* 19th, the defendants inquire, on what terms the office will take a risk on 26 horses and 20 oxen, on board the brig *Gleaner*; and the plaintiffs in answer, reply, that "they *will take the risk proposed* at 15 *per cent.* or 10 *per cent.* with a warranty that the stock were safe on the 7th *December*, but no partial loss to be paid under 10 *per cent.*, nor any loss on account of sickness."

In reply to this offer, the defendants, by their letter of *January* 22d, say, "we have received yours of 21st instant, and accept your terms for the *stock* in the *Gleaner*; and wish a policy filled, *viz.*

on 26 horses, valued at $2200 at 15 *per cent.* $450
and 20 oxen, valued at    800    policy    1

                         $3000          451

Above is a note for the premium."

Now, in what part of this short and simple correspondence, is an intimation given, that one separate and distinct *risk* is to be taken on the horses, and another upon the oxen? Or that the company were to pay any partial loss, unless it amounted to 10 *per cent.* on the value of both? In the first letter of inquiry, the defendents ask, on what terms the office will take "*a risk*" on 26 horses and 20 oxen, on board the *Gleaner*. To construe this language as equivalent to an inquiry, on what terms the office would take *one* risk on 26 horses, and *another* on 20 oxen, on board the *Gleaner*, appears to me unauthorized and improper. It is not in fact construing

language, which is doubtful, but an arbitrary interpolation of *other* language than what is used by the party, called for neither by any ambiguity in the language itself, or any difficulty in applying that language to the subject matter of the contract. The inquiry was as to *one* risk, to be taken on *stock*; and that stock consisting of horses and oxen. If there is no uncertainty in the inquiry of the defendants, neither is there any in the answer of the plaintiffs; for that answer refers to the letter of inquiry, and contains the terms on which they will take " *the risk proposed*" by the defendants.

These terms being satisfactory to the defendants, they inform the plaintiffs, by their letter of the 21st, that " they *accept their terms* for the *stock* in the *Gleaner*, and wish a policy filled," &c. There is no uncertainty in any part of the previous correspondence, either in the letter of inquiry, or in the terms given by the office, and no pretence of any offer by the office to take a separate risk on the horses, and another upon the oxen, and pay any partial loss, provided it amounted to 10 *per cent.* on the value of *either*. And by the letter in question, the terms given by the company are " *accepted*," and the contract treated as complete. Now, any further language used by the the defendants, in this letter of the 21st, upon approved principles of construction, ought to receive such an interpretation, if possible, as shall be consistent with the preceding part of the correspondence. This would be required by common sense, as well as law, if the remaining language was doubtful, and admitted of two constructions. But in the remaining part of this letter there is nothing at variance with what has hitherto appeared to be the object of the parties. Hitherto, nothing definite had been specified, either as to the amount to be insured by the office, or whether the policy should be an *open* or *valued* one. To inform the office of the defendants' wishes in these respects, was the object of the last part of this letter. The value of the oxen, and that of the horses, is, therefore, given, both amounting to 3000 dollars, and the office is informed, that the defendants wish a policy on the horses and oxen valued at this sum; and the premium note of 451 dollars, shews the intention to have the property fully covered, by an insurance to this amount. The latter part of this letter, therefore, so far from indicating an expectation, or wish, that a separate risk should be taken, to the amount of 2200 dollars, on the horses, and another, to the amount of

*New-Haven,*
July,
1820.

Ocean Insurance Co.
*v.*
Carrington.

*New-Haven,*
*July,*
*1820.*

Ocean Insu-
rance Co.
*v.*
Carrington.

800 dollars, on the oxen, merely shews the expectation of a valued policy, and the amount they wished the plaintiffs to underwrite.

The policy desired was sent immediately, by the plaintiffs, to the defendants; and they are, in my opinion, entitled to recover the *premium note.*

CHAPMAN, J. was of the same opinion.

New trial not to be granted.