### NEW HAVEN WATER COMPANY *v.* BOARD OF TAX REVIEW OF THE TOWN OF PROSPECT

COTTER, C. J., LOISELLE, BOGDANSKI, LONGO and PETERS, Js.

Argued January 5—decision released June 26, 1979

*Barry C. Hawkins,* with whom was *Robert W. Elmore,* for the appellant (plaintiff).

*Anthony M. Fitzgerald,* with whom, on the brief, was *William B. Fitzgerald, Jr.,* for the appellee (defendant).

Longo, J. The plaintiff, a privately owned water company supplying water for domestic and commercial uses in, inter alia, the town of Prospect, appealed to the Court of Common Pleas from the action of the defendant board of tax review of the town of Prospect in refusing to reduce the valuation and assessment on certain real property owned by the plaintiff situated in the town of Prospect. The plaintiff's claim of unlawful assessment was and is limited to a portion of its land, comprising approximately 791 acres, used as a watershed for its Prospect reservoir, and certified as forest land by the state forester in 1970 pursuant to § 12-107d

of the General Statutes.[1] The trial court did not agree with the plaintiff's claim that the defendant's method of valuation for its forest land during the taxable years 1970 through 1974 was improper and illegal and that the resulting assessment values were therefore disproportionate and excessive. In so doing, the court accepted the method of assessment valuation advanced by the defendant at trial. The court, moreover, rejected a separate claim made by the plaintiff relating to the town's failure to classify the plaintiff's approximately 791 acres as forest land for the taxable year 1974.

The facts, as stipulated by the parties and as found by the court disclose the following: On September 17, 1970, the state forester issued forest land certificate No. 1331 to the plaintiff, designating 791 acres of the plaintiff's property as certified forest land, pursuant to § 12-107d of the General Statutes. On October 5, 1970, and thereafter in 1971, 1972 and 1973, the plaintiff duly applied, in proper form, to the Prospect assessor for classification of the above land as forest land. The plaintiff's application for forest land classification was denied in each year by the town's assessor, and each denial was affirmed by the defendant board of review. Based on these denials, the assessor and the defendant valued the plaintiff's certified forest land acres for taxation purposes at their fair market value, rather than their "current use value" as is provided for classified forest land under § 12-63 of the General Statutes. The parties agreed, however, in the trial court that during the above years

---

[1] The plaintiff owned approximately 825 acres of land in Prospect subject to municipal taxation for the years 1970–1974. The proper valuation of thirty-four of those acres, comprising the twelve acre Prospect reservoir and approximately twenty-two acres of land not certified as forest land, is not disputed in this appeal.

(1970–1973) this portion of the plaintiff's real property in Prospect, which had been certified as forest land and used as a watershed for the protection and preservation of water purity in the plaintiff's Prospect reservoir, should have been valued and assessed for taxation purposes as if it had properly been classified by the assessor as forest land.[2] Thus, at this stage of the proceeding, the only issue before the trial court, with the exception of the taxable year 1974, was the assessment in each year (1970–1973) which should have been made had the forester's certificate been recognized and the land classified as forest land.

With respect to the year 1974, the same basic issue of valuation, with a slight variation, was presented. The plaintiff did not file an application for forest land classification of its certified 791 acres in 1974, in purported reliance upon the provisions of § 6 of 1974 Public Act No. 343 (General Statutes § 12-504h) which provided, in part, "Any land which has been classified by the record owner as . . . forest land pursuant to section 12-107d . . . shall remain so classified without the filing of any new application subsequent to such classification, notwithstanding the provisions of said sections . . . 12-707d . . . ." The defendant responded that pursuant to § 12-107c (c) of the General Statutes[3]

---

[2] The impetus for the parties' agreement in this respect was this court's decision in *Torrington Water Co.* v. *Board of Tax Review*, 168 Conn. 319, 362 A.2d 866 (1975), in which we held, in construing § 12-107d of the General Statutes, that upon proper application, a local assessor was bound to provide forest land classification to the land of private water companies which had been certified as forest land by the state forester.

[3] Section 12-107c (c) is a waiver provision relating to the failure to file an application for classification as farm land. Reliance upon it is apparently misplaced; the provisions of § 12-107d (e) set forth the waiver rule relating to classification of forest land, stating that:

it was not legally required to assess the disputed
land as certified forest land because no application
for such a classification had been made by the plain-
tiff in 1974. The defendant refused to classify the
plaintiff's land as forest land for 1974, and assessed
it at fair market value. The court was thus addi-
tionally required to decide whether the Prospect
assessor was legally required to assess the plain-
tiff's land as forest land pursuant to § 12-107d, at
the valuation rate provided in § 12-63, rather than at
fair market value, notwithstanding its failure to
file an application for forest land classification in
1974.

The trial court found, in accord with the valua-
tion theory advanced by the defendant's experts,
that under § 12-63 of the General Statutes, set out
more fully herein, the "current use" value of the
plaintiff's land should be determined by capitalizing
that portion of the plaintiff's net income attribut-
able to the sale of water drawn from its Prospect
reservoir, and determined the full current use value
of the 791 acres for each of the taxable years in
question. The court found further that, for taxable
year 1974, § 12-504h of the General Statutes did not
excuse the owners of land not classified as forest
land from filing an application for such classifica-
tion, notwithstanding that the assessor had wrong-
fully refused to classify the land as forest land
during the years 1970–1973, and concluded that the
assessor was entitled to assess the plaintiff's land
at fair market value in 1974. From the judgment
rendered, the plaintiff has appealed to this court.

"Failure to file an application for classification of land as forest
land within the time limit prescribed in subsection (c) and in the
manner and form prescribed in subsection (d) shall be considered
a waiver of the right to such classification on such assessment list."

The plaintiff's numerous assignments of error may be discussed in the context of the following two issues: (1) whether the court erred in finding that the defendant's method of valuing the plaintiff's certified forest land, for the years 1970–1973, was proper under § 12-63 of the General Statutes, and in concluding that the assessment values derived by that method were not illegal, disproportionate and excessive; and (2) whether the court erred in concluding that the plaintiff was not entitled to have its certified forest land classified and valued as forest land in 1974.

## I

## A

Section 12-63 of the General Statutes governs the valuation of classified forest land, providing in pertinent part: "The present true and actual value of land classified . . . as forest land pursuant to section 12-107d . . . shall be based upon its current use without regard to neighborhood land use of a more intensive nature . . . . The present true and actual value of all other property shall be deemed by all assessors and boards of tax review to be the fair market value thereof and not its value at a forced or auction sale." Pursuant to this valuation rate, the "present true and actual value" of classified forest land must reflect the actual use to which the land is being put by its owner; *Rustici* v. *Stonington,* 174 Conn. 10, 14, 381 A.2d 532 (1977); and although no single, particular formula is required for appropriate valuation; id.; *Xerox Corporation* v. *Board of Tax Review,* 175 Conn. 301, 306, 397 A.2d 1367 (1978); *Lomas & Nettleton Co.* v. *Waterbury,* 122 Conn. 228, 231, 188 A. 433 (1936); capitalization of net income is an acceptable and com-

monly applied method, as used by appraisers and approved by this court. *Federated Department Stores, Inc.* v. *Board of Tax Review,* 162 Conn. 77, 291 A.2d 715 (1971); *Leonard Building Corporation* v. *New Britain,* 146 Conn. 681, 154 A.2d 614 (1959); *Burritt Mutual Savings Bank* v. *New Britain,* 146 Conn. 669, 154 A.2d 608 (1959). The assumption behind this method is that the value of property "may be considered to be that which it has as used and by reason of its use, and it is often a reasonable assumption that it is worth a sum capitalized on the basis of its average income and earning capacity." *Somers* v. *Meriden,* 119 Conn. 5, 8, 174 A. 184 (1934); see annot., 95 A.L.R. 442. It must be kept in mind, however, that although the applicable statutes do not delineate a particular formula for arriving at the value of forest land based upon its current use, it is clear that preferential tax treatment is afforded farm, forest and open space lands pursuant to §§ 12-107a—12-107f of the General Statutes for the purpose of encouraging the preservation of property so designated by ensuring against the conversion of such land to more intensive uses as the result of higher property tax assessments. General Statutes § 12-107a. "Thus, market value, a fundamental rule or standard of valuation of property taxation, must give way to an assessment based on the current use of the property, since, as we have said, the declared purpose of the statute is intended to grant favorable treatment to such property to prevent its forced conversion to more intensive use. *Rolling Hills Country Club, Inc.* v. *Board of Tax Review,* 168 Conn. 466, 470, 473, 363 A.2d 61." *Rustici* v. *Stonington,* supra, 13; see *Johnson* v. *Board of Tax Review,* 160 Conn. 71, 73, 273 A.2d 706 (1970); *Marshall* v. *Newington,* 156 Conn. 107, 239 A.2d 478 (1968).

With this much, the parties agree, but as the arguments concerning the proper components of a valuation formula based upon capitalization of net income unfold, the situation becomes considerably more complex. To better facilitate comprehension of the plaintiff's claims of error relating to the method proposed by the defendant's experts, and adopted by the court, it is appropriate to set forth that method. The defendant valued the plaintiff's 791 acres of classified forest land for each year in question by obtaining the plaintiff's total net income for that year from the plaintiff's reports to the Connecticut public utilities commission, its successor, the Connecticut public utilities control authority, and the federal securities and exchange commission. From total net income, the defendant subtracted the amount of income from sources other than the sale of water to obtain net income attributable to the sale of water. The defendant allocated a portion of that net income to the plaintiff's water collection and supply system in Prospect by multiplying the plaintiff's total net income attributable to water sales by the ratio which the number of gallons drawn from the Prospect reservoir bore to the total gallons sold by the plaintiff in that year.

To the net income thus allocated to Prospect for each year, the defendant added the amount of real property taxes attributable to the plaintiff's 825 acres in Prospect. After these adjustments were made, all net income so allocated to Prospect was attributed exclusively to the plaintiff's 791 acres of forest land, and twelve acres of the Prospect reservoir, which the defendant categorized as the only land necessary to gather, protect and preserve the water supply for the Prospect reservoir. The net income attributed to the plaintiff's approxi-

mately 803 acres (791 acres of forest land and twelve acres of reservoir) was then divided by a capitalization rate,[4] which the defendant computed by adding the effective real property tax rate to the actual rate of return achieved by the plaintiff from its total operations for the year in question, to obtain a capitalized value for the plaintiff's 803 acres. That value was divided by 803 to arrive at what the defendant asserted to be the per acre, current use value of each of the plaintiff's 791 acres of forest land. The resulting per acre value was then multiplied by 791 and the product added to the stipulated value of the plaintiff's other 34 acres in Prospect to obtain a total valuation of the plaintiff's acreage in Prospect for purposes of assessment.[5]

## B

The plaintiff makes a complex, multipronged attack upon this method of valuation,[6] but, simply stated, the plaintiff claims that, under this method,

---

[4] The capitalization rates found by the court to be reasonable, were: 10.54% for 1970 and 1971 (composed of an 8% "interest" factor — the plaintiff's actual rate of return — and a 2.54% effective tax rate factor); 10.78% for 1972 (8.5% "interest" plus 2.28% effective tax rate); 11.5% for 1973 (9% "interest" plus 2.5% effective tax rate); and 11.10% for 1974 (8.5% "interest" plus 2.6% effective tax rate).

[5] The full true and actual use valuation of the disputed 791 acres was therefore determined as follows:

| Year | No. of Acres | Value Per Acre ($) | Full Use Value |
|------|--------------|--------------------|----------------|
| 1970 | 791 | 500 | 395,500 |
| 1971 | 791 | 410 | 324,310 |
| 1972 | 791 | 500 | 395,500 |
| 1973 | 791 | 530 | 419,230 |
| 1974 | 791 | 580 | 459,571 |

[6] The plaintiff claims that the trial court's method does not fairly allocate income among all of its assets; that the court's method does not conform to accepted appraisal theory; that the method of valuation does not conform to the law of this state; that the method does

its entire business net income was improperly attributed solely to its watershed land, on the basis of a percentage gallonage allocation formula.[7] Put another way, the plaintiff argues that, by exclusively focusing upon the gallons of water drawn from the Prospect reservoir in any given year as the sole means of valuing the plaintiff's forest land, the defendant improperly overlooked the value of assets, one of which is the forest land, which contribute to the production of its income. Thus, it is argued, assuming arguendo, that the use of the method of capitalization of net income was proper in this case, the case must nonetheless be remanded for a determination of the allocation of the value of the forest land, as it functions as a component part of the plaintiff's other assets necessary in the production of income, to arrive at the proper current use value of the forest land. We are in substantial agreement with the plaintiff's claims.

---

not conform to the recommendations of the advisory committee which recommended a way to calculate the use value of classified land; and that the court's method of valuation does not achieve the tax relief and conservation purposes of §§ 12-107a—12-107e and § 12-63 of the General Statutes.

[7] The defendant argues that we are precluded from addressing the plaintiff's arguments concerning the method of valuation propounded by the defendant's experts and accepted by the court, on grounds, inter alia, that the plaintiff tried its case on one theory and now seeks a reversal on appeal on another theory; see *Mayflower Sales Co.* v. *Kavalier*, 125 Conn. 452, 6 A.2d 326 (1939); and that the defendant has abandoned the material claims made in the trial court. We disagree. The plaintiff claims on appeal that the method accepted by the court was illegal and arbitrary and resulted in a disproportionately excessive valuation of its forest land watershed. As disclosed by its draft finding, the plaintiff made this claim, and arguments supporting it, in the trial court. Moreover, as the defendant points out, this court may find error in the method of valuation employed if we find that method to be unreasonable. In this context, we consider the merits of the plaintiff's arguments.

The plaintiff is an integrated water company, having seventeen reservoirs and four well sites located in thirteen different towns. All of the plaintiff's water sources can be utilized to provide water to any part of the plaintiff's system. As an integrated water company, the plaintiff can draw water from any one reservoir source at any particular time, and can thereby provide water whenever, in any community served, it is needed. It is thus apparent that the gallons sold from any particular reservoir do not correlate with the investment in that particular reservoir, and that the gallons sold from any particular reservoir do not directly correlate with the income which can be said to be generated by that reservoir. The plaintiff's investment in its water supply system, moreover, has a net book value of approximately $60,000,000, of which only about 3 percent is attributable to land.[8]

In this light, the court's finding that only the plaintiff's 791 certified forest land acres (and the 12 acres comprising the reservoir) were necessary for the production and preservation of the Prospect water supply, and its conclusion that the use value of the plaintiff's forest land could be determined solely by capitalizing the net income produced by the water drawn from the reservoir, cannot stand. Despite the fact that the plaintiff is an integrated water company, as outlined above, the method

---

[8] These fundamental facts relating to the physical structure of the plaintiff's water system, found in the transcript and in the plaintiff's draft finding, were not contained in the court's finding. They were elicited before the trial court through the testimony of the plaintiff's vice-president and corporate secretary, and were neither challenged nor contradicted by the defendant. Although we do not add these facts to the finding, we may assume, given the nature of the plaintiff's integrated water system, that it possesses assets in addition to the property in dispute.

accepted by the trial court did not allocate any value to the assets required to integrate the plaintiff's water system, such as the plaintiff's undepreciated investment in pipes, pumps, water mains, dams, and other capital equipment which are, in addition to the forest land, essential to the collection and delivery of water from the Prospect reservoir. In short, the court's method of valuation attributed all of the plaintiff's business income, and hence business value, to one asset: the plaintiff's forest and reservoir land.[9]

In any method of property valuation for purposes of taxation, all of the various components which enter into the value of the property are to be considered by the assessors. *Bornstein* v. *State Tax Commission*, 227 Md. 331, 176 A.2d 859 (1962); *Utah-Idaho Sugar Co.* v. *Salt Lake County*, 60 Utah, 491, 210 P. 106 (1922); see 72 Am. Jur. 2d, State and Local Taxation § 754; 84 C.J.S., Taxation § 411 (2). Where more than one asset contributes, in combination, to the production of income, a valuation based solely upon the value of one component asset — in this case, the plaintiff's land necessary for the production of water — is improper; as we point out, an assessor should take into consideration all factors and all assets which affect the value of the property. 16 McQuillan, Municipal Corporations (3d Ed. 1972 Rev.) § 44.110; *Lomas & Nettle-*

---

[9] We cannot agree with the defendant's argument, accepted by the court, that no net income need be attributed to assets other than land used in the direct production of water for sales because deductions from income for expenses and depreciation account for the value of the contribution of such expense and capital depreciation items to the plaintiff's income. At the least, depreciation and expenses do not account for the contribution to the generation of income of land which is not depreciable, nor for assets other than its 791 forest acres essential to the plaintiff's production of a water supply.

*ton Co.* v. *Waterbury,* 122 Conn. 228, 233, 188 A. 433 (1936); *Bridgeport Hydraulic Co.* v. *Stratford,* 139 Conn.. 388, 94 A.2d 1 (1953); cf. *National Folding Box Co.* v. *New Haven,* 146 Conn. 578, 153 A.2d 420 (1959); *Chudomelka* v. *Board of Equalization,* 187 Neb. 542, 192 N.W.2d 403 (1971); annot., 96 A.L.R.2d 666, 685, § 5[c].

It is, moreover, basic appraisal theory that, in a multi-asset valuation formula, net income must be equitably allocated among all of the different assets, i.e., land and other capital investments, used to generate that income. See American Institute of Real Estate Appraisers, "The Appraisal of Real Estate" (5th Ed. 1967) pp. 287–90, 293–95; cf. P. Wendt, Real Estate Appraisal: Review and Outlook (1974) p. 154; Lee and Le Forestier, Review and Reduction of Real Property Assessments (1960) § 1:08.[10] When viewed in the light of our discussion above, it becomes apparent that the method accepted and applied by the court overlooked significant components of the plaintiff's business assets, related to the production and preservation of its water supply, which, when taken into account, will more accurately reflect the "current use"; General Statutes § 12-63; of the plaintiff's forest land. Further proceedings, which we shall discuss, infra, are required for a revaluation of the

---

[10] This view is fortified by the statutory scheme relating to land valuation in this state. Under § 12-63 of the General Statutes, the value of the plaintiff's classified forest land must be separated from the value of the plaintiff's other assets, as the value of the former is to be based on its current use, while the latter must be valued under General Statutes §§ 12-63 and 12-75 at their fair market value. The plaintiff's forest land is used in combination with other capital investment to generate income. Given that fact, it becomes clear that a proper valuation method must distinguish between net income attributable to the forest land, and net income attributable to other capital assets.

current use of the plaintiff's certified forest land; *Rustici* v. *Stonington*, 174 Conn. 10, 381 A.2d 532 (1977); under General Statutes § 12-63.

## II

As this case must be returned to the trial court, we now address the issue whether the court erred in concluding that the plaintiff was not entitled to classification of its 791 acres as forest land in 1974, and to have the same valued as such. As we initially indicated, the plaintiff did not file an application with the state forester for designation of its land as forest land, in reliance upon § 12-504h of the General Statutes, then § 6 of Public Acts 1974, No. 343, which provides, in part, that any land classified by the record owner as forest land, under § 12-107d, shall remain so classified "without the filing of any new application subsequent to such classification . . . ."

As admitted by the defendant and found by the trial court, the plaintiff made proper applications for classifications from 1970–1973, which were denied, and classification of the plaintiff's land was refused by the Prospect assessor. The defendant argued, and the court agreed, that § 12-504h did not relieve the plaintiff from making another application for classification in 1974. The court based this conclusion, in part, upon a finding that the plaintiff did not appeal the defendant's denial of classification for 1970 through 1973. This finding is clearly erroneous: the record shows that the plaintiff properly appealed the assessor's denials of classification for those years first to the defendant board of tax review and then to the Court of Common Pleas.

The plaintiff having properly appealed, we are faced only with the issue whether our decision

in *Torrington Water Co. v. Board of Tax Review,*
168 Conn. 319, 362 A.2d 866 (1975), as it relates to
§ 12-504h, excused the defendant from applying for
classification in 1974, and effectively allowed the
plaintiff to maintain its forest land classification,
stipulated as correct by the defendant for 1970–
1973, for the taxable year 1974. We cannot agree
with the trial court's determination that the plain-
tiff's 791 acres should not be classified as forest land
for 1974.

After our decision in *Torrington Water Co.,* the
defendant admitted that the refusal to classify the
plaintiff's 791 acres as forest land was incorrect,
and that these acres would be considered and valued
as forest land for 1970 through 1973. The defendant
now appears to argue that, although the plaintiff's
acres were certified by the state forester as forest
land in 1970, and although the plaintiff was wrong-
fully denied such classification by the defendant in
the above years, the plaintiff was nonetheless not
entitled to classification in 1974. Such an argument
is untenable. The plaintiff could do no more than it
did to meet the requirements of § 12-504h, having
obtained certification of its acres as forest land,
having applied to the defendant's assessor for 1970–
1973 for such classification, having been refused
classification by the assessor, and having appealed
that refusal. The plaintiff believed that, after *Tor-
rington Water Co.,* its acres were covered, as a
matter of law, by § 12-504h. We must construe that
section to apply not only when land has in fact
previously been classified, but also when such classi-
fication has illegally been refused by the assessor.
To hold otherwise would precariously rest the land-
owner's rights under § 12-504h in the hands of an
assessor whose arbitrary or, as in this case, illegal

refusal to classify land would deny to the landowner the benefits of § 12-504h. In short, were we to agree with the defendant on this point, the result would allow the defendant the increased benefits of fair market value taxation, applying to nonclassified land, on the basis of the defendant's legally incorrect refusal of classification. Furthermore, such a result would come exceedingly close to nullifying our decision in *Torrington Water Co.* We hold that the court erred in concluding that the defendant was not entitled to have its 791 acres classified and valued as forest land in 1974.

### III

A word concerning the remand in this case, for the direction of the trial court and the guidance of the parties, is appropriate. See *Elida, Inc.* v. *Harmor Realty Corporation*, 177 Conn. 218, 231–32, 413 A.2d 1226. We have indicated that capitalization of net income is an appropriate method for the valuation of the plaintiff's forest land, in order to determine its "current use" under § 12-63 of the General Statutes. Utilizing this method, the factors which may be relevant upon remand include, but are not limited to, the following: The plaintiff is an integrated water company, with assets involved in the production and preservation of the Prospect water supply in addition to its 791 acres of forest land; a method of valuation upon remand should assess the forest land, in a ratio to its value as a component of the plaintiff's entire business, separating the forest land value from entire business value before capitalization; the fact that the plaintiff is allowed, by law, a rate of return on its capital investment is not irrelevant to the adoption of a valuation formula; and finally,

it is permissible to capitalize the plaintiff's income on the basis of average net income over a suitably long period of years.

There is error, the judgment is set aside, and the case is remanded with direction to return the case to the defendant board for a revaluation of the disputed property for the years 1970–1974 consistent with the views expressed in this opinion.

In this opinion the other judges concurred.