BIRCHWOOD COUNTRY CLUB, INC. *v.* BOARD OF TAX REVIEW OF THE TOWN OF WESTPORT

COTTER, C. J., LOISELLE, BOGDANSKI, LONGO and PETERS, Js.

---

[4] This conclusion is based on the unusual facts found in this case as discussed more particularly above.

Argued April 3—decision released July 10, 1979

*Melvin J. Silverman,* with whom, on the brief, was *Ernest L. Josem,* for the appellant (plaintiff).

*Keith D. Dunnigan,* with whom, on the brief, was *Bruce L. Levin,* for the appellee (defendant).

COTTER, C. J.   Pursuant to General Statutes § 12-118 then in effect, the plaintiff corporation appealed to the Court of Common Pleas from a decision of the defendant board of tax review of the town of Westport. Following a trial, the court found the issues for the defendant and rendered judgment dismissing the plaintiff's appeal, from which the plaintiff appealed to this court.

The finding, which is not subject to material correction, discloses the following:   The plaintiff, a corporation, owns and operates a country club consisting of a golf course, tennis courts, club house and other facilities located on 81.86 acres of land in the town of Westport.   On October 27, 1966, the Westport planning and zoning commission, pursuant

to General Statutes § 12-107e, designated the 81.86 acres of land owned by the plaintiff as open space land. As early as 1969, the town assessor assessed only approximately seventy acres of the plaintiff's property as "open space." On September 25, 1972, the plaintiff and the defendant town, acting through its First Selectman, duly authorized by the Westport representative town meeting, entered into an agreement which recited, inter alia, that the plaintiff is the owner of approximately 81.86 acres of land "of which 70 acres is open space." Pursuant to that agreement, the plaintiff granted the town an easement for open space upon its property for a period of fifteen years. See General Statutes § 7-131b.

When the town assessor received the plaintiff's application for open space classification on the list of October 1, 1972, he held it in abeyance pending the plaintiff's submission of the open space easement described above. On the list of October 1, 1972, the defendant assessed 11.86 acres of the plaintiff's land as "residential" at $22,000 an acre, and seventy acres as "recreational" open space at $3000 per acre. The town assessor and the planning and zoning commission, working together in their respective official capacities, determined that, in arriving at the "current use value" of open space land pursuant to the valuation rule mandated in General Statutes § 12-63, open space land devoted to a recreational use would be assessed at $3000 per acre and open space land that was passive in nature would be assessed at $1000 per acre.

Pursuant to the above procedure, the assessor's total assessment of the plaintiff's land in October, 1972, was $282,500. On the plaintiff's appeal to the defendant board, however, the 1972 land assessment

was reduced to $223,990. Nevertheless, the plaintiff appealed to the Court of Common Pleas from that action of the defendant concerning the valuation for the years 1972, 1973, 1974 and 1975, claiming, inter alia, that they were manifestly excessive. The plaintiff focused its claim on two basic issues: (1) whether the plaintiff's entire tract of 81.86 acres should have been assessed on the basis of an "open space" classification; and (2) whether there was any authority for either the tax assessor or the board of tax review to differentiate between "recreational" and "passive" open space land with respect to the per-acre assessment. In this appeal from the trial court's affirmance of the decision of the defendant board, our review is circumscribed by the issues and claims of law presented below.[1] *Rybinski* v. *State Employees' Retirement Commission,* 173 Conn. 462, 466, 378 A.2d 547.

The plaintiff contends that its property should have been assessed as open space land in the years 1972 through 1975, predicated upon the action of

[1] In the trial court, the plaintiff made the following four claims of law which were overruled:

"23. A Tax Assessor is obligated by law to assess the entire acreage designated as open space by the Planning Commission as open space, where there has been no change in use from the date of designation."

"24. The assessment for the designated open space areas should have been at the same acreage rate as that assessed on passive open space, where there was no income produced from the property's use as recreational open space."

"25. There is no authority for the Assessor to have insisted that the plaintiff and the Town of Westport enter into an open space easement prior to the assessment by the Assessor of the property as such open space."

"26. The reassessment of the property for a higher value than that set by the Board of Tax Review for the prior year is illegal and arbitrary, in the absence of a general reassessment of all properties within the Town in the absence of any change in use."

the Westport planning and zoning commission in 1966 designating its entire tract as "open space." Under General Statutes § 12-107e, the planning commission of a municipality may, in preparing a plan of development, designate areas which it recommends for preservation as areas of open space land. Land so designated in any finally adopted plan of development shall be classified by the assessor as open space land, upon timely application by the owner, unless he determines that there has been a change in the area which adversely affects its essential character as an area of open space land. Once so classified, the valuation of open space land shall be based upon its "current use" without regard to neighborhood land use of a more intensive nature. General Statutes § 12-63; see *Rustici* v. *Stonington*, 174 Conn. 10, 381 A.2d 532.

From the foregoing, it is apparent that the initial "designation" of areas of open space land by a local planning commission is to be distinguished from the "classification" of such land by the town assessor. Although we agree with the plaintiff that, in the absence of any change in an open space area adversely affecting its essential character as such since the time of its designation, the assessor must classify such land as open space and include it as such on the assessment list; cf. *Torrington Water Co.* v. *Board of Tax Review*, 168 Conn. 319, 362 A.2d 866; there is no corresponding restriction precluding a local planning commission from altering its designation of areas in which open space classification has been made available in the first instance. To the contrary, the statutory provisions relating to open space land have, to a large extent, granted localities autonomy and flexibility in this important area of

land use control. See Tyler & Valentine, "The 1972 Open Space Conveyance Tax," 47 Conn. B.J. 332, 336 (1973).

In the present case, the plaintiff's request for open space designation for its property was presented to the Westport planning and zoning commission in October, 1966. From the evidence before it, the trial court concluded that, in view of the commission's expressed desire to devise a uniform policy in the area of open space designation, its initial designation of 81.86 acres of the plaintiff's land as open space was made subject to change and refinement once the policies and procedures for open space were formulated by the commission. At the commission's suggestion, the plaintiff's attorney indicated his belief that the plaintiff would be interested in a future agreement whereby the town could obtain a guarantee from a landowner that the property would remain open space for a stated period of time.

In September, 1971, the planning and zoning commission adopted "Open Space Policies and Procedures" which detailed the policy of the town regarding open space designation. Apparently, only seventy acres of the plaintiff's property qualified for such designation under the policy adopted in 1971; and, in September of 1972, a legal notice was published of a public hearing by the planning and zoning commission to review, inter alia, the open space designation of the plaintiff's property "70 acres of which qualify under the Planning and Zoning Commission's open space policy." No evidence appears in the record indicating that the plaintiff contested this characterization of the open space status of its property, although it had the oppor-

tunity to do so. Moreover, the plaintiff subsequently executed the so-called open space agreement with the town which, as noted previously, recited that only seventy acres of the plaintiff's property was open space,[2] and which contained the following clause: "Whereas, in furtherance of the agreement contained, the Planning and Zoning Commission has designated said Tract, or a portion thereof, as open space land, such designation to become effective when and for so long as this agreement shall be in effect."

The burden was upon the plaintiff to prove that the assessment of its property was illegal or excessive. *Rustici* v. *Stonington,* supra, 15; *Connecticut Coke Co.* v. *New Haven,* 169 Conn. 663, 673, 364 A.2d 178. From the evidence and testimony presented,[3] the trial court could properly have concluded that the 1966 open space designation of the plaintiff's entire tract was merely provisional in nature and was in fact superseded by the commission's adoption of the "Open Space Policies and Procedures" in 1971. It was a question of fact whether more than seventy acres of the plaintiff's property qualified for open space designation under the policy of the commission so as to mandate that the assessor classify its entire tract as such in the absence of any subsequent change affecting its essential character. This the plaintiff failed to establish. *Dickau* v. *Glastonbury,* 156 Conn. 437, 441, 242 A.2d 777.

---

[2] The trial court concluded that the plaintiff failed to adduce any evidence to support its claim that the assessor *insisted* the open space easement be granted to the town as a precondition to the assessment of that property as open space. In its appeal, the plaintiff has not established that conclusion to be erroneous.

[3] At trial, the only witness to testify was the assessor for the town of Westport who was called by the plaintiff.

Moreover, even if we assume that the plaintiff had sustained its burden of proving that the 1966 designation of its entire tract was not legally changed by the subsequent actions of the commission, the plaintiff's own actions in the years following that initial designation preclude it from obtaining the relief sought. As mentioned previously, in 1966, the plaintiff, through its attorney, agreed in principle to enter into an agreement with the town guaranteeing the preservation of its open space areas in accordance with the procedures to be adopted in the future. In 1972, that agreement, which specifically delineated seventy acres of the plaintiff's tract as open space was duly executed by the plaintiff's president. When we consider that event in conjunction with the fact that since at least as early as 1969 only seventy acres of the plaintiff's property had been assessed as open space without opposition by the plaintiff, we conclude that the plaintiff cannot now be permitted to maintain a position inconsistent with the one to which it has consented or acquiesced. See 28 Am. Jur. 2d, Estoppel and Waiver §§ 51, 57.

The plaintiff's second claim, that no authority exists for a differentiation in value between open space land used for recreational purposes and such land which is passive in nature, requires little discussion.[4] Under General Statutes § 12-63, the value of land classified as open space shall be based upon its current use, and no singular, particular formula is required for appropriate valuation. *Rustici* v. *Stonington,* supra. The plaintiff claims that the

[4] Notwithstanding the plaintiff's first claim that its entire acreage was entitled to be assessed as open space, the plaintiff does not claim error in the method of valuation used as to the 11.86 acres.

$3000 per-acre valuation of "recreational" open space was arbitrarily reached and could not have been arrived at except by disregarding the "current use" value restriction set forth in the statute.[5] As the plaintiff concedes, however, the record is devoid of any evidence as to the precise method utilized by the assessor in arriving at the $3000 figure in issue. In the absence of sufficient evidence establishing that the per-acre valuation ultimately arrived at by the assessor did not reflect the property's current use, the plaintiff's claim must fail. Under § 12-63, the assessor is not only authorized, but is mandated, to make a differentiation in the valuation of open space land based upon the nature of the current use being made of such land. See *New Haven Water Co.* v. *Board of Tax Review,* 178 Conn. 100, 422 A.2d 946; *Rustici* v. *Stonington,* 174 Conn. 10, 381 A.2d 532.

Nor is the fact that the valuation and assessment of the plaintiff's land was increased in consecutive years where there was no change in use or renovation of the property indicative of non-compliance with the statutory valuation requirements. Since, under § 12-63, the valuation of the plaintiff's classified land must reflect the *current* use value of that property; *Rustici* v. *Stonington,* supra, 13; its valuation in succeeding years will not necessarily remain constant. In this time of increasing property values, yearly valuations based upon current use might likewise reflect a corresponding increment. See, e.g., *New Haven Water Co.* v. *Board of Tax Review,* supra, 108 n.5.

---

[5] In its brief before this court, the plaintiff makes reference to the fact that, under General Statutes § 7-131b, it was entitled to an even lower assessment than that of open space land generally because of the easement agreement with the town. Since that issue was not raised in the trial court, it will not be considered here. See footnote 1, supra.

A review of the findings shows factual support for the court's conclusions that the valuations and assessments for the years 1972 through 1975 were not illegal.

There is no error.

In this opinion LOISELLE, BOGDANSKI and PETERS, Js., concurred.

LONGO, J. (dissenting). There is no dispute that on October 27, 1966, the Westport planning and zoning commission designated 81.86 acres of land owned by the plaintiff as open space pursuant to the provisions of § 12-107e of the General Statutes.[1] In the trial court, the plaintiff claimed that the Westport assessor was obligated, as a matter of law, to continue its assessment of the entire acreage, designated until that time as open space by the planning commission, as open space. This court now rejects the plaintiff's claim, employing a rationale and reaching a result with which I cannot agree.

Under § 12-107e, the planning commission may, in preparing a plan of development, designate areas upon the plan which it recommends for tax treatment as open space land. The statute, in no uncertain terms, *mandates* that land designated as open space "shall" be classified and assessed as open

[1] "[General Statutes] Sec. 12-107e. CLASSIFICATION OF LAND AS OPEN SPACE LAND. (a) The planning commission of any municipality in preparing a plan of development for such municipality may designate upon such plan areas which it recommends for preservation as areas of open space land. Land included in any area so designated upon such plan as finally adopted may be classified as open space land for purposes of property taxation if there has been no change in the use of such area which has adversely affected its essential character as an area of open space land between the date of the adoption of such plan and the date of such classification. . . ."

space, if the assessor determines that there has been no change in the essential character of the land adversely affecting its qualities as open space land. General Statutes § 12-107e (b). In the present case, the majority concludes that a planning commission may alter its initial designation of open space areas, a conclusion with which I agree, under proper circumstances. The majority, however, apparently goes on to hold that the plaintiff's land *was, in fact,* redesignated to limit open space designation to seventy acres, by the adoption of "Open Space Policies and Procedures in 1971," which, it is held, superseded the initial 1966 open space designation of the plaintiff's 81.86 acres and that, in any event, the plaintiff waived its right to open space designation. These conclusions are, I believe, erroneous in law and inconsistent with the open space statutory scheme and certain of our cases.

Although § 12-107e is silent as to the procedure for changing an initial open space designation, the power to redesignate initially qualified open space land ought to be no more permissive than the statutory restrictions on *reclassification* by an assessor. Reclassification by an assessor is limited to situations where the land initially designated as open space has undergone a change affecting its character as open space. The record indicates that neither the town nor the defendant board, after initially determining that the plaintiff's land was qualified for open space tax treatment, at any time decided that the land had undergone any essential change. Yet, as of at least 1969, the town treated for tax purposes only seventy acres of the plaintiff's land as open space. I can conceive of no cogent reason for allowing a town to alter its tax treatment of otherwise qualified open space land in the absence

of evidence that the character of the land, which is, after all, the factor upon which open space treatment is predicated, has significantly changed since the initial open space designation. Thus, I would conclude that the town lacked authority to treat only seventy acres of the plaintiff's land as open space, absent a change in the conditions of the land affecting its character as open space.

More importantly, even assuming that the planning commission's authority to redesignate open space land is not circumscribed by the same limitations placed upon the authority of an assessor to do so, the record discloses that there was, in fact, no redesignation of the plaintiff's land for tax purposes. The record indicates only that in 1971, the town adopted "open space policies and procedures." The record does not demonstrate that after the 1966 designation of the plaintiff's land as open space on the town plan of development; see General Statutes § 12-107e (a) ; the town amended its plan of development to reflect that only seventy of the plaintiff's acres were designated as open space. If an initial open space designation is required by § 12-107e (a) to be reflected upon the town plan of development, I believe that a change in the designation must similarly be reflected on the plan, after a hearing at which the affected owner could be heard on the proposed redesignation. Although the record discloses that the planning and zoning commission noticed a hearing to review the plaintiff's open space designation, there is no evidence that the hearing ever took place. Thus, the adoption of the 1971 policies is treated by the majority as an "implicit redesignation" of the plaintiff's property, which result is not only inconsistent with the statutory scheme; cf. *Torrington Water Co.* v. *Board of Tax Review,* 168

Conn. 319, 362 A.2d 866; but raises serious questions concerning the plaintiff's right as a property owner to have a meaningful opportunity to be heard on the change in the tax treatment of its property. See *Roundhouse Construction Corporation* v. *Telesco Masons Supplies Co.,* 168 Conn. 371, 376, 362 A.2d 778; see generally, *Society for Savings* v. *Chestnut Estates, Inc.,* 176 Conn. 563, 572–73, 409 A.2d 1020. It is not, as the majority holds, a "question of fact" whether more than seventy acres qualified for open space designation. After the initial designation, there being no change in the land's character or use, no hearing on redesignation and no amendment to the plan of development, the plaintiff was entitled to continued open space designation as a matter of law.

Neither can I agree with the majority's discussion of the waiver issue. Although from 1969 to 1971 only seventy acres were treated as open space, the only years in question on this appeal are 1972–1975. The statute governing waiver, § 12-107e(c),[2] clearly indicates that a failure to apply for classification in one year is a waiver *only* as to that year's assessment list. The statute, first, does not address waiver in relation to the town's *designation* of land as open space, but merely speaks to an assessor's classification of land as such. Second, different assessment lists in separate tax years create entirely distinct situations as to a property owner's entitlement to open space designation. Therefore, any waiver as to

---

[2] "[General Statutes] Sec. 12-107e. . . . (c) Failure to file an application for classification of land as open space land within the time limit prescribed in subsection (b) and in the manner and form prescribed in subsection (b) shall be considered a waiver of the right to such classification *on such assessment list.* . . ." (Emphasis added.)

the years 1969–1971 is, as a matter of law, irrelevant to the plaintiff's right to open space designation from 1972–1975.

I would find error in the trial court's determination of the first of the plaintiff's claims of law alone and remand the case for further proceedings.