ANNE BURTON *v.* JOSEF BURTON
(10278)

PETERS, HEALEY, SHEA, GRILLO and COVELLO, Js.

Argued November 5, 1982—decision released January 25, 1983

*Ernest C. LaFollette,* for the appellant (defendant).

*Carlo Forzani,* with whom, on the brief, was *Joseph F. Keefe,* for the appellee (plaintiff).

GRILLO, J. This is an appeal from the modification of a child support order. The original order was part of a New York dissolution decree. The following issues are raised: (1) whether the trial court erred in failing to consider the existence and effect of a prior Connecticut judgment involving the same parties and subject matter; (2) whether the trial court correctly applied the substantive law of the foreign jurisdiction; (3) whether the evidence presented by the plaintiff was sufficient to sustain the judgment; (4) whether the trial court erred in failing to consider either the plaintiff's income or the defendant's expenses in connection with his present family; (5) whether the trial court erred in awarding attorney's fees for proceedings in the trial court and for defense of the present appeal.[1]

---

[1] Although the defendant briefed an additional argument asserting error by the trial court in an earlier hearing on a contempt motion, the defendant abandoned this issue at oral argument.

The marriage of the plaintiff, Anne Burton, and the defendant, Josef Burton, was dissolved by the Supreme Court of the state of New York on December 3, 1974. The dissolution decree granted custody of the couple's three minor children to the plaintiff, and incorporated by reference a separation agreement which had been entered into by the parties in October, 1974.[2] The agreement provided, inter alia, (1) that the defendant would pay the plaintiff $500 per month as child support; (2) that the plaintiff would possess and occupy the marital residence located in New York until either the youngest child attained age twenty-one or the plaintiff remarried; and (3) that upon the occurrence of either of those events, the residence would be sold and the proceeds divided equally between the parties. The plaintiff had been and was to be responsible for the mortgage, taxes, and other household expenses, which would entitle her to claim the tax benefits therefrom as well as the tax exemptions for the children.

The defendant, a New York resident at the time of the dissolution, moved to Massachusetts in 1976 and to Connecticut in 1978. The plaintiff has remained a resident of New York.

By petition dated May 25, 1978, the plaintiff instituted an action seeking a $300 per month upward modification of child support from a New York state family court. The matter was transferred to the Connecticut Superior Court, Litchfield County, and heard by the court, *Martin, J.,* on October 16, 1978. At this hearing counsel for both the plaintiff and the defendant agreed to pursue the

[2] The decree stated in pertinent part: "the Separation Agreement . . . shall control the matter of . . . child support . . . and shall be incorporated into this decree by reference but shall not merge and shall survive the same . . . ."

modification petition in New York. The trial court, pursuant to the Uniform Reciprocal Enforcement of Support Act; General Statutes § 46b-198; entered an order of support confirming the defendant's $500 per month child support obligation. Although the modification petition was referred back to New York, a decision on the merits was never reached.

The plaintiff instituted the present action in the Superior Court for the Litchfield judicial district on January 9, 1980, pursuant to General Statutes § 46b-71. On February 13, 1980, she moved for an upward modification of child support payments, alleging a substantial change in financial circumstances. After several preliminary hearings, the parties proceeded to a hearing on the merits of the motion for modification on May 23, 1980. By memorandum of decision dated June 20, 1980, the trial court, *Pickett, J.,* granted the plaintiff an upward modification of child support payments from $500 to $900 per month. The court further awarded the plaintiff $1500 in attorney's fees. At hearings on September 12 and September 17, 1980, the trial court heard evidence relevant to the plaintiff's motion for allowance of counsel fees on appeal. By memorandum dated September 24, 1980, the trial court, *Pickett, J.,* awarded the plaintiff attorney's fees on appeal in the amount of $3000, plus the costs of printing briefs and transcripts. From those awards, the defendant appeals.

The defendant's first assignment of error concerns the 1978 Superior Court order. The defendant asserts that as a final judgment on the merits of the petition for modification, the 1978 order precludes the court from considering evidence prior to that date concerning changed circumstances. Alternatively, he argues that even if the 1978 proceeding

is construed as a stipulation between the parties to pursue the modification in New York, the plaintiff should be bound by that stipulation and therefore be required to litigate the issue in New York. We disagree.

We note first that although the defendant, in a preliminary hearing, apprised the trial court of the existence of the 1978 order and urged that it be construed as a judgment on the merits, the defendant failed to raise the issue at the modification hearing and took no objection to the admission of pre-1978 evidence. If we assume, for the sake of argument, that the claim is a proper subject on appeal, it is nevertheless without merit. Examination of the transcript of the October 16, 1978 hearing clearly reveals that the parties stipulated to the return of the modification petition to New York for a hearing on the merits. The 1978 order does not deny a modification request, but merely confirms and enforces the original child support order which was initiated in a foreign state. There was therefore no judicial action concerning a petition for modification which was binding on the trial court in the present case.[3]

The defendant next assigns as error the trial court's application of the substantive law of New

---

[3] We refuse to consider the defendant's additional claim, raised for the first time in his reply brief on appeal, that the stipulation by the parties to return the 1978 petition for modification to New York precludes the present motion for modification. As we have repeatedly reiterated, issues not properly raised before the trial court will ordinarily not be considered on appeal. E.g., *Birchwood Country Club, Inc.* v. *Board of Tax Review,* 178 Conn. 295, 298, 422 A.2d 304 (1979). Moreover, as the defendant admitted, the apparent reason for the plaintiff's failure to pursue the 1978 petition in New York was that the plaintiff was unable to serve the defendant with process.

York. Clearly, when modifying a foreign matrimonial judgment, Connecticut courts must apply the substantive law of the foreign jurisdiction. General Statutes § 46b-71 (b).[4] In the present case the trial court and both parties relied principally upon the decision of the New York Court of Appeals in *Matter of Boden* v. *Boden,* 42 N.Y.2d 210, 366 N.E.2d 791 (1977), as the controlling authority delineating the appropriate circumstances under which child support payments may be modified beyond the terms of a separation agreement incorporated in a judgment. In *Boden,* the court stated that "[a]bsent a showing of an unanticipated and unreasonable change in circumstances, the support provisions of the agreement should not be disturbed. . . . Unless there has been an unforeseen change in circumstances and a concomitant showing of need, an award for child support in excess of that provided for in the separation agreement should not be made based solely on an increase in cost where the agreement was fair and equitable when entered into." (Citations omitted.) Id., 213.

While the parties offer considerable New York authority in their respective arguments relative to whether the trial court correctly applied the *Boden* criteria, we need not reach those issues. In the subsequent case of *Matter of Brescia* v. *Fitts,* 56

---

[4] General Statutes § 46b-71 (b) states, in pertinent part: "A foreign matrimonial judgment so filed shall have the same effect and may be enforced or satisfied in the same manner as any like judgment of a court of this state and is subject to the same procedures for modifying, altering, amending, vacating, setting aside, staying or suspending said judgment as a judgment of a court of this state; provided, in modifying, altering, amending, setting aside, vacating, staying or suspending any such foreign matrimonal judgment in this state the substantive law of the foreign jurisdiction shall be controlling."

N.Y.2d 132, 436 N.E.2d 518 (1982), the New York Court of Appeals commented at length concerning the applicability and scope of the *Boden* decision. Contrary to the broad reading assigned *Boden* by several lower courts, the *Brescia* court restricted the prerequisites for child support modification as delineated within *Boden* to those proceedings where one parent is asserting his or her *own* interest in having the other parent contribute a greater percentage of the financial burdens incident to child rearing. *Matter of Brescia* v. *Fitts,* supra, 139. Where both parents are financially able to satisfy the children's financial needs, as was the case in *Boden,* then a separation agreement may not be modified without satisfying the *Boden* criteria. Id. "Thus, the principles set forth in *Boden* apply only when the dispute is directed solely to readjusting the respective obligations of the parents to support their child." (Citation omitted.) Id.

The situation is different, however, when the *children's* right to adequate support is being asserted. Under this circumstance, the power to modify support agreements is governed by the New York Family Court Act, and is not diminished by the existence of a separation agreement.[5] Id., 139–40. Under the provisions of this act, the trial

---

[5] The relevant provisions of § 461 of the New York Family Court Act (McKinney 1975) are as follows:

"(a) A separation agreement, a decree of separation, and a final decree or judgment terminating a marriage relationship does not eliminate or diminish either parent's duty to support a child of the marriage under section four hundred thirteen of this article. In the absence of an order of the supreme court or of another court of competent jurisdiction requiring support of the child, the family court may entertain a petition and make an order for its support.

"(b) If an order of the supreme court or of another court of competent jurisdiction requires support of the child, the family court may

court may increase a child support award "if [the] petitioner has demonstrated a change in circumstances . . . warranting such an upward modification." Id., 140.

In *Brescia,* the court noted that upon consideration of the circumstances at the time of the original award, viewed in comparison with the circumstances existing at the time of the petition for modification, several factors may control a modification determination, including, but not limited to: (1) the children's increased needs due to special circumstances or due to the additional activities of growing children; (2) the increased cost of living as it relates to greater expenses relative to child rearing; (3) the loss of income or assets by a parent, or conversely a substantial improvement in the financial condition of a parent; (4) the prior and present life-styles of the children. Id., 141. "Whether the evidence adduced by the parties shows a change in circumstances sufficient for [the trial court] to order a modification is a question best left to the discretion of the lower courts, whose primary goal is, of course, to make a determination based upon the best interests of the children." Id., 140–41.

Thus, under the principles recited in *Brescia,* we must first determine whether the present dispute concerns the children's right to adequate support. Our review of the record before us clearly reveals that it did. The standard which governs the petition for modification is therefore whether the plaintiff

"(i) entertain an application to enforce the order requiring support; or

"(ii) entertain an application to modify such order on the ground that changed circumstances requires such modification, unless the order of the supreme court provides that the supreme court retains exclusive jurisdiction to enforce or modify the order."

produced evidence sufficient to demonstrate a change in circumstances warranting an upward modification. Although the trial court applied the stricter standards delineated within the *Boden* decision relative to modification proceedings, this application was favorable to the defendant and is therefore not a justifiable basis of complaint by him. *State* v. *Hawthorne,* 175 Conn. 569, 574, 402 A.2d 759 (1978).

The defendant next attacks the evidence presented by the plaintiff as insufficient to grant an upward modification of child support. Specifically, he characterizes the plaintiff's financial affidavits as speculative and unsubstantiated and therefore inadequate to justify the trial court's award. We disagree.

At the hearing on the plaintiff's petition for modification, the evidence presented consisted entirely of the parties' respective financial affidavits and their testimony. The plaintiff's financial affidavits for both 1974 and 1980 were before the court. The trial court found, in comparing these affidavits as supplemented by the plaintiff's testimony, that the increased costs for property taxes, utilities, food, clothing and transportation totaled $33.75 per week per child.[6] The plaintiff testified extensively regarding these increased costs of supporting the children, and her present inability to

---

[6] The court concluded that the total increase in expenses between 1974 and 1980 relative to maintaining the plaintiff's household amounted to $135 per week. By deducting one-fourth of this amount as applicable to the plaintiff's own expenses, the court reasonably reached a modification figure of $33.75 per week for each of the three children, or $400 per month.

meet those expenses.[7] Indeed, far from being unsubstantiated, our review of the transcript reveals that the plaintiff testified in a detailed and comprehensive manner concerning the expenses listed in her affidavit. Conversely the defendant, a physician specializing in pediatrics, testified that his income from 1974 to 1980 had grown from approximately $24,000 to $43,000, and admitted that as a physician he is at the beginning of his earning capacity. From this testimony, the trial court could reasonably have concluded that the defendant's earnings would continue to increase in the future.

As we have repeatedly stated, it is the province of the trier to weigh the evidence presented and to determine its credibility. E.g., *Swift & Co.* v. *Rexton, Inc.,* 187 Conn. 540, 543, 447 A.2d 9 (1982). Because of the trial court's advantageous position, every reasonable presumption will be given in favor of its ruling, and " '[n]othing short of a conviction that the action of the trial court is one which discloses a clear abuse of discretion can warrant our interference.' " *Trunik* v. *Trunik,* 179 Conn. 287, 290, 426 A.2d 274 (1979). Under the circumstances of the present case, we conclude that the best inter-

[7] The plaintiff testified that her financial situation required her to borrow money from relatives in order to pay fuel costs to maintain the house at fifty degrees during the heating season, and to buy necessities on credit which she could not pay off. She further testified to her inability to keep her mortgage payments current, offering five mortgage delinquency notices into evidence. While the defendant attacks the increases found by the court as "unsubstantiated," he does not contest the mathematical accuracy of the figures with the exception of the property tax increase, which he argues increased by $9.80 per week and not, as the trial court concluded, by $25 per week. Even assuming the accuracy of this contention, we regard this error as harmless in view of the plaintiff's testimony that her financial affidavit did not include several expenses relative to the children's daily needs, such as school supplies, lunch money, and other miscellaneous items.

ests of the children were served by the upward modification as warranted by the changed financial circumstances; *Matter of Brescia* v. *Fitts,* 56 N.Y.2d 132, 140–41, 436 N.E.2d 518 (1982); and that "there was evidence before the trial court which, if believed, would have provided an adequate basis for the finding actually made. That is all that is required." *Hardisty* v. *Hardisty,* 183 Conn. 253, 256, 439 A.2d 307 (1981).[8]

The defendant next claims that the trial court impermissibly failed to consider the plaintiff's increase in income since 1974, and further failed to consider the defendant's current expenses relative to the maintenance of his present family. Clearly, under New York law, both of these considerations are relevant factors to be weighed by the trial court. *Berzins* v. *Berzins,* 64 App. Div. 2d 881, 407 N.Y.S.2d 899 (1978); *Werner* v. *Werner,* 204 Misc. 1085, 1089, 127 N.Y.S.2d 278 (1953).

With respect to the plaintiff's income, the trial court found an increase from $3600[9] to $9297 between 1974 and 1980, yet noted that within a month one of the plaintiff's two part-time jobs would terminate. Although the plaintiff's 1980

---

[8] We note that while we are bound to apply the substantive law of New York to determine the propriety of the present petition for modification, the weight and sufficiency of the evidence presented, as a procedural issue, is governed by Connecticut law. *Broderick* v. *McGuire,* 119 Conn. 83, 101, 174 A. 314 (1934); 16 Am. Jur. 2d, Conflict of Laws § 118.

[9] Although the defendant disputes the accuracy of the $3600 figure, arguing that the plaintiff was in fact making only $1253 per annum in 1974, he reaches this conclusion by erroneously relying on the parties' joint tax return for 1974. The plaintiff testified that the 1974 return revealed only some $1200 in earnings because she had only begun working in September of 1974.

financial affidavit reflects income from two part-time jobs, the plaintiff testified at the May 23, 1980 hearing that as of May 9, 1980, one of these jobs had terminated. Moreover, although she actively sought further employment, she was unsuccessful in that search. Although the defendant characterizes this evidence as speculative, we note that under appropriate circumstances New York courts do not hesitate to consider potential future earning capacity when modifying child support awards. E.g., *Hurst* v. *Hurst*, 106 Misc. 2d 636, 641, 434 N.Y.S.2d 635 (1981); *Villano* v. *Villano*, 98 Misc. 2d 774, 414 N.Y.S.2d 625, 629 (1979). Under these circumstances, we cannot conclude that the trial court was clearly in error in its apportionment of "the costs of [child] support between [the parties] in accordance with their respective means . . . ." *Miller* v. *Miller*, 61 App. Div. 2d 774, 402 N.Y.S.2d 202 (1978).

Turning to the defendant's contention that the trial court disregarded the defendant's financial responsibilities with respect to his present family, we are satisfied from our review of the record that "*all* parties entitled to support [will] receive . . . fair proportions in the light of the particular circumstances . . . ." (Citation omitted.) *Werner* v. *Werner,* supra, 1089. The defendant's 1980 financial affidavit shows total weekly expenses of $674.29. After deduction of the defendant's expenses applicable to child support payments[10] and to insurance premiums,[11] the defendant's weekly expenses

---

[10] Although the defendant lists his child support obligation as $125 per week, the correct weekly amount, calculated on the basis of $500 per month or $6000 per year, is $115.

[11] We deduct the defendant's insurance premiums, shown in his affidavit as $70 per week, as expenses not applicable to his present family because the defendant, as a doctor, must maintain malpractice

amount to $489, or $122.25 for each person in the defendant's present household.[12]   The defendant's new child support obligation, as ordered by the trial court, represents a total upward modification of $400 per month or $92.30 per week.   Even if we assume that the defendant must satisfy this increase of $92.30 per week wholly from income currently expended on his second family, i.e., $489 per week, his income would still allow him to spend $99.17 per person per week on his second family, while he would provide only $69.23 per child per week as support for his first family.   In view of these calculations, when coupled with the defendant's admission that he is just beginning his earning capacity, we cannot say that the trial court failed to consider and to provide for the defendant's support obligations applicable to his second marriage.[13]

The defendant's final argument concerns the trial court's award of attorney's fees.   The court awarded the plaintiff $1500 for the proceedings in the trial court and $3000 plus expenses to defend the present appeal.

The allowance of counsel fees is within the sound discretion of the trial court; *Ridolfi* v. *Ridolfi*, 178 Conn. 377, 380, 423 A.2d 85 (1979); provided the court considers the parties' respective financial abil-

insurance and because under the terms of the separation agreement the defendant must provide health insurance for the children of his first marriage.

[12] The defendant's present household consists of himself, his second wife and their two minor children.

[13] It is significant to note that because the plaintiff is responsible for payment of the mortgage on the marital residence pursuant to the separation agreement, the defendant will recoup a portion of the $900 per month support payments when the residence is sold and the proceeds evenly divided between the parties.

ities and the criteria set forth in General Statutes § 46b-82. General Statutes § 46b-62; see *Murphy v. Murphy,* 180 Conn. 376, 380, 429 A.2d 897 (1980).

With respect to the award for legal services rendered during the trial, the court specifically quoted the relevant provisions of General Statutes § 46b-62.[14] Although the court did not expand on the "respective financial abilities" of the parties pursuant to the claim for counsel fees, it is abundantly clear from the court's detailed memorandum concerning the petition for modification, the findings of which are supported by the record, that the plaintiff lacked sufficient financial resources to keep current her bills for such necessities as fuel oil, food and clothing.[15] Moreover, a ritualistic rendition of each statutory consideration would serve no useful purpose. *Posada* v. *Posada,* 179 Conn. 568, 573, 427 A.2d 406 (1980). The court further noted that the present litigation was extraordinarily lengthy and contested, a fact conceded by the defendant.[16] While we recognize that the parties' respective financial positions, coupled with the criteria delineated within General Statutes § 46b-82,

[14] General Statutes § 46b-62 states, in pertinent part: "In any proceeding seeking relief under the provisions of this chapter . . . the court may order either spouse to pay the reasonable attorney's fees of the other in accordance with their respective financial abilities and the criteria set forth in section 46b-82."

[15] We reject the defendant's contention that the plaintiff received sufficient funds to pay counsel fees as the result of a prior court order awarding the plaintiff $1100, $250 of which represented counsel fees. Although parties who possess "ample liquid funds" resulting from a prior court order should pay their own attorney's fees; *Koizim* v. *Koizim,* 181 Conn. 492, 501, 435 A.2d 1030 (1980); in the present case it is evident that the plaintiff did not enjoy such a financial position.

[16] Pointing to the trial court's review of the proceedings, including statements by the trial court that the defendant attempted to delay and to prevent a hearing on the merits, the defendant characterizes the award of attorney's fees as effectively punishing the defendant

control the propriety of a counsel fee award, we note that the nature, complexity and scope of the litigation are also relevant factors for consideration by the trial court in determining the amount of the award. We are thus unable to regard the $1500 award as excessive as beyond the sound discretion of the trial court.

Similarly, we are unable to find the $3000 appellate award, plus costs, improper or excessive. At the hearing pursuant to the plaintiff's motion for fees and costs to defend the present appeal, the plaintiff testified to her continuing financial difficulties and her inability consistently to pay for such necessary items as the mortgage, car repairs, and clothing. The plaintiff produced a qualified witness who testified that reasonable counsel fees to defend a domestic relations appeal to this court range from a minimum of $2500 to a maximum of $5000. Under these circumstances, the appellate award falls within a range which reflects the exercise of the sound discretion of the trial court.

There is no error.

In this opinion the other judges concurred.

---

for presenting a "vigorous defense." We do not, however, view the court's explanation of the proceedings in this light. Rather, we note that the length of the proceedings and the time expended by counsel are relevant when the amount of the award is set.