BUTWIN SPORTSWEAR COMPANY,
Respondent,

v.

ST. PAUL FIRE & MARINE
INSURANCE COMPANY,
Appellant.

No. C5–95–385.

Court of Appeals of Minnesota.

July 25, 1995.

Mark A. Gwin, Andera E. Reisbord, Robert J. McGuire, Cousineau, McGuire & Anderson, Minneapolis, for appellant.

Randal W. LeNeave, MacKenzie & Hallberg, Minneapolis, for respondent.

Considered and decided by PETERSON, P.J. and LANSING and DAVIES, JJ.

## OPINION

DAVIES, Judge.

St. Paul Fire & Marine Insurance Company appeals summary judgment, arguing that the district court erroneously determined that the Manufacturer's Output Blanket Earnings and Expense Endorsement (Endorsement) to a fire insurance policy covered all of a public adjuster's fee. We reverse and remand.

## FACTS

In July 1991, a fire occurred at the main plant of Butwin Sportswear Company, a sportswear manufacturer. Butwin hired a public adjuster, Supornick Associates, to assist with its insurance claim (and, perhaps, to help get the business back up and running).

St. Paul insured Butwin. With Supornick's help, Butwin proved losses of $521,-103.17, which St. Paul paid. Butwin then sought an additional $72,897 from St. Paul for Supornick's fee. (The fee was calculated as a percentage of the insurance benefits recovered.) Butwin claimed that the Endorsement covered such an expense. St. Paul denied the claim, and Butwin sued. The district court found that the language of the Endorsement was ambiguous and, construing the policy against St. Paul, determined that Supornick's fee was covered. St. Paul appeals.

## ISSUE

Did the district court err in determining that Supornick's fee was covered under the Endorsement?

## ANALYSIS

On appeal from summary judgment, this court decides whether the district court correctly applied the law and whether there are any genuine issues of material fact. *State by Cooper v. French,* 460 N.W.2d 2, 4 (Minn. 1990). Interpretation of an insurance policy is a question of law, which this court reviews de novo. *Garrick v. Northland Ins. Co.,* 469 N.W.2d 709, 711 (Minn.1991).

 Under the Endorsement, St. Paul agreed to pay

actual loss of earnings as well as extra expenses that result from the necessary suspension of your operations during the period of restoration caused by direct physical loss or damage to property at an insured location.

The policy defines extra expenses as

the necessary expenses you incur during the period of restoration that you wouldn't have incurred if there had been no direct

physical loss or damage to property caused by a covered cause of loss.

Finally, the policy contains rules for adjustment of earnings and extra expense loss. To determine what to pay its insured under these rules, St. Paul considers the loss, the insured's responsibility for resuming operations, the limits of coverage, and the deductible. The loss determination section provides:

> Extra Expense. We'll cover extra expense for operating when these expenses are over and above what it would normally cost to conduct your business, had no damage occurred. * * * [W]e'll deduct the salvage value that remains of any property brought for temporary use during the period of restoration.
>
> We'll also cover all necessary expenses that reduce the business income loss that otherwise would have been incurred.[1]

The district court determined that the phrase "all necessary expenses" is subject to more than one interpretation and therefore construed the Endorsement against St. Paul. St. Paul argues that this was erroneous because, according to its plain language, the Endorsement covers only expenses that are incurred as a result of the suspension of business activities. Supornick's fee resulted, St. Paul argues, not from the fire or any suspension of Butwin's business, but rather from Butwin's preparation for a possible conflict with St. Paul.

■ Under the policy, an "extra expense" is a necessary expense that would not have been incurred had there been no physical loss or property damage. The policy does not define "necessary"; thus, the term must be given its plain and ordinary meaning. *St. Paul Fire & Marine Ins. Co. v. National Computer Sys., Inc.,* 490 N.W.2d 626, 631 (Minn.App.1992), *pet. for rev. denied* (Minn. Nov. 17, 1992). "Necessary" means "[a]bsolutely essential * * * [n]eeded to achieve a certain result or effect; requisite." American Heritage Dictionary 1207 (3d ed. 1992). A necessary expense, therefore, is

one that is essential. The district court erred in finding this term ambiguous.

Next, St. Paul is obligated to pay an expense only if the expense necessarily results from the suspension of Butwin's operations. Because the policy does not define "result[s] from," the phrase must be given its ordinary meaning. *St. Paul Fire & Marine,* 490 N.W.2d at 631. "Result" means "to come about as a consequence." American Heritage Dictionary 1539 (3d ed. 1992).

Applying this construction to the Endorsement, we conclude that Supornick's help in presenting the fire loss claim is not a covered expense. It was not essential because St. Paul might well have paid all covered losses without Supornick's involvement. Butwin engaged Supornick primarily in anticipation of conflict and to assure itself a maximum recovery, not out of necessity.

■ It appears, however, from the argument and record before us, that some of Supornick's services, such as salvaging damaged goods and helping get the business running again, may have mitigated Butwin's damages. To the extent Supornick provided services for such a purpose, its fees are covered as a consequence of the suspension of Butwin's business operations. Because the district court did not address this question, we remand the issue of what portion of Supornick's fee, if any, is so covered.

## DECISION

The district court erred in granting summary judgment. Aid in presenting a claim is not covered. But, to the extent any portion of Supornick's fee was a necessary expense to mitigate damages, it is covered.

**Reversed and remanded.**

---

1. The district court quotes from the 1990 version of the Endorsement, which does not include "business income" in the loss determination section. The parties agree, however, that the 1988 version applies here. In any event, the subtle difference in terminology does not affect our analysis.