**GLASS SERVICE COMPANY, INC., Respondent,**

v.

**PROGRESSIVE SPECIALTY INSURANCE COMPANY, et al., Appellants.**

No. C9–99–1175.

Court of Appeals of Minnesota.

Jan. 4, 2000.

Charles J. Lloyd, Lindquist & Vennum, P.L.L.P., Minneapolis, MN (for respondent).

John M. Bjorkman, Brian A. Wood, Eric J. Magnuson, Rider, Bennett, Egan & Arundel, L.L.P., Minneapolis, MN (for appellants).

Thomas H. Goodman, Siegel, Brill, Greupner, Duffy & Foster, P.A., Minneapolis, MN (for amicus curiae Minnesota Independent Glass Association).

Considered and decided by DAVIES, Presiding Judge, FOLEY, Judge,* and MULALLY, Judge.**

## OPINION

DAVIES, Judge.

Appellant Progressive Insurance Company argues that the trial court erred in interpreting appellant's insurance policy,

---

* Retired judge of the Minnesota Court of Appeals, serving by appointment pursuant to Minn. Const. art. VI, § 10.

** Retired judge of the district court, serving as judge of the Minnesota Court of Appeals by appointment pursuant to Minn. Const.Art. VI, § 10.

having improperly substituted language from the Unfair Claims Practices Act (UCPA) in place of insurance policy language. We affirm.

## FACTS

Under its automobile insurance policy, appellant Progressive Insurance Company provides coverage for windshield glass.[1] Respondent Glass Service Company is a Minnesota business that has provided auto glass replacement services to auto owners, including some of those insured by appellant. Respondent received an assignment of each such insured's claim against appellant.

This dispute arose when appellant did not pay the full amount of respondent's invoices dated from 1996 through March 10, 1998. Before 1996, appellant routinely paid the full amount of respondent's invoices; but, in 1996, appellant established a procedure to determine the amount it would pay on an auto windshield claim. Under this new procedure, appellant determined a range of charges it would pay for the replacement by calling three glass replacement businesses for quotes. In each of the claims involved in this case, respondent's price was higher than the price quoted by the vendors surveyed.

The trial court concluded that appellant's market surveys were flawed because it did not always follow its established procedure and, even when it did, appellant did not ask for the price of a similar quality glass or sealant kit. The trial court also concluded that, because respondent proved its prices were within a reasonable range, appellant breached its contract with its insureds when it failed to pay "reasonable costs to 'repair or replace the property with other property of like kind and quality.'"

The trial court denied appellant's motion for a new trial or amended findings of fact. This appeal follows.

## ISSUES

I.  Did the trial court err in its interpretation of appellant's insurance policy?

II.  Did the trial court err in finding that appellant breached its contract?

III.  Should the appendix to appellant's reply brief, and any references thereto, be stricken?

## ANALYSIS

### I.

The interpretation of insurance contract language and the construction of a statute both raise questions of law, which are reviewed de novo. *Watson v. United Services Auto. Ass'n,* 566 N.W.2d 683, 688 (Minn.1997). "General principles of contract interpretation apply to insurance policies." *Lobeck v. State Farm Mut. Auto. Ins. Co.,* 582 N.W.2d 246, 249 (Minn.1998). If contract language is clear and unambiguous, "the language used must be given its usual and accepted meaning." *Id.* quoting (*Bobich v. Oja,* 258 Minn. 287, 294, 104 N.W.2d 19, 24 (1960)). Exclusions in an insurance policy are part of the contract and must be given the same consideration as other parts of the policy. *Lobeck,* 582 N.W.2d at 249.

Appellant argues that the trial court did not give proper meaning to the policy term "necessary." In *Butwin Sportswear Co. v. St. Paul Fire & Marine Ins. Co.,* 534 N.W.2d 565, 567 (Minn.App. 1995), this court held that "necessary" is not an ambiguous term. The plain and ordinary meaning of "necessary" is "[a]bsolutely essential * * * [n]eeded to achieve a certain result or effect; requisite." *Id.* (quoting American Heritage

---

1. Appellant's insurance policy states they will "pay under Comprehensive Coverage, without a deductible, for the costs of repairing or replacing damaged window glass * * * ." The policy also states:

Our Limit of Liability for loss shall not exceed * * * the amount necessary to repair or replace the property with other of the like kind and quality * * *.

Dictionary 1207 (3d ed.1992)). In *Butwin,* this court, applying the phrase "necessary expenses," concluded that the service of a fire loss "adjuster" was peripheral to the claim and not essential. Thus, the cost of that service was ruled not to be a necessary expense. *Butwin,* 534 N.W.2d at 567.

There lurks about this case the *Butwin* question of unnecessary peripheral costs, for respondent's sales practices include giving "free" steaks to its customers as sale premiums. But, because appellant did not at trial attack giving free steaks as an unnecessary add-on service, we are left on appeal with no choice but to treat the practice as a legitimate sales device, comparable to gift calendars, pens, matchbooks, dinner mints, etc.

That leaves us with the question whether the price charged was reasonable, for common sense dictates that the amount "necessary" to replace a windshield with one of like kind and quality is a price that is reasonable in the marketplace. The trial, in fact, focused on the range of prices within the marketplace and on whether appellant's process properly determined the "reasonable cost." Appellant concedes that its policy obligates it to pay for windshield replacement so long as the price charged falls within a reasonable range, for in paragraph six of its answer to the amended complaint, appellant stated:

> [Appellants] agree they are required to pay the reasonable cost sufficient to pay for the repair or replacement of comparable window glass. [Appellants] maintain that they have a process in place to determine the reasonable cost, and have already paid Glass Service Company that amount on each claim in dispute.

We in no way intend to suggest that appellant and other insurers should not be allowed to control costs. But adding "necessary" to the policy language gave appellant no additional tool with which to manage costs, for the concept of reasonableness inherently encompasses the concept of "necessary" as stated in appellant's policy. The trial court properly focused on the reasonableness of respondent's charges.

■ Appellant further argues that the trial court erred because it substituted a reasonableness requirement from the UCPA in place of the "amount necessary" language in appellant's insurance policy and then never made findings as to "amount necessary." But, in its order and memorandum responding to posttrial motions, the trial court found that,

> [e]ven without using the UCPA as a guide, [appellant] has failed to provide [respondent] with "the amount necessary to repair or replace the property with other of the like kind and quality."

We take the trial court at its word that it did not, in the end, use the UCPA to find that appellant breached its contract.[2]

## II.

■ In a breach-of-contract action against an insurance company, the plaintiff has the burden to prove that the insurer violated the terms of its insurance policy. *D.H. Blattner & Sons, Inc. v. Firemen's Ins. Co. of Newark,* 535 N.W.2d 671, 675 (Minn.App.1995), *review denied* (Minn. Oct. 18, 1995). Appellant argues that respondent did not meet its burden to prove that its invoices were in the amounts necessary to replace auto windshield glass with glass of like kind and quality. Appellant also argues that there was no evidence to support the trial court's findings that

2. The purpose of the UCPA is "to regulate trade practices in the business of insurance * * * ." Minn.Stat. § 72A.17 (1998). Section 72A.201, subdivision 6(14), makes it an unfair trade practice by an insurer if the insurer fails "to assume all reasonable costs sufficient to pay the insured's chosen vendor for the repair or replacement of comparable window glass."

The UCPA provides for administrative enforcement and does not create a private cause of action. *Morris v. American Family Mut. Ins. Co.,* 386 N.W.2d 233, 235 (Minn.1986); *Glass Serv. Co. v. State Farm Mut. Auto. Ins. Co.,* 530 N.W.2d 867, 872 (Minn.App.1995), *review denied* (Minn. June 29, 1995).

respondent's charges were reasonable and that appellant's market survey was flawed.

We do not set aside the trial court's findings unless they are clearly erroneous. Minn. R. Civ. P. 52.01. The parties presented testimony at trial as to the necessity and the reasonableness of the charges. There is evidence to support the trial court's finding that respondent's charges were reasonable in this market.[3] There is also evidence that the market survey was flawed.

The trial court did not clearly err in concluding that appellant breached its contract with respondent.

## III.

The general rule is that this court will not consider evidence outside the record. *Fabio v. Bellomo*, 489 N.W.2d 241, 246 (Minn.App.1992), *aff'd*, 504 N.W.2d 758 (Minn.1993). Respondent moved to strike the appendix to appellant's reply brief, and any references to the appendix, on the basis that the information is outside the scope of the trial record and not relevant to this appeal. Appellant counters that the material objected to responds to inaccuracies and misinformation in the Minnesota Independent Glass Association amicus curiae brief. Appellant also argues that this court may take judicial notice of the newspaper advertisements in its appendix because their truth or accuracy cannot be disputed. *See Femrite v. Abbott N.W. Hosp.*, 568 N.W.2d 535, 541 (Minn.App.1997) (court may take judicial notice of facts that are capable of accurate and ready determination), *review denied* (Minn. Nov. 18, 1997).

But this court cannot take judicial notice of the advertisements in light of how appellant seeks to use them. The advertisements are beyond the scope of the appellate record and are stricken.

**3.** At trial, there was no showing—or effort to show—that local market prices were in gener-

Respondent also seeks an award of attorney fees incurred in bringing the motion to strike. We deny fees, for appellant's reply brief does not appear to have been written with the intent to delay proceedings or increase costs.

## DECISION

The trial court did not err in its interpretation of appellant's insurance policy language or in finding that appellant insurance company breached its contract.

Respondent's motion to strike is granted, but its motion for attorney fees is denied.

**Affirmed; motion to strike granted, motion for fees denied.**