# NEW ENGLAND PIPE CORPORATION *v.* NORTHEAST CORRIDOR FOUNDATION ET AL.
## (SC 17065)

Borden, Norcott, Katz, Palmer and Vertefeuille, Js.

Argued March 9—officially released October 5, 2004

*Deborah E. Roser*, with whom, on the brief, was *Peter J. Ponziani*, for the appellant (plaintiff).

*Stephen M. Prignano*, with whom, on the brief, was *Armando E. Batastini*, pro hac vice, for the appellees (defendants).

*Opinion*

PALMER, J. The plaintiff, New England Pipe Corporation, appeals from the trial court's judgment dismissing its action for injunctive relief in connection with an arbitration proceeding between the plaintiff and the defendants, Northeast Corridor Foundation, Balfour Beatty Construction, Inc., Mass Electric Construction Company, and J.F. White Construction Company.[1] The plaintiff brought an action seeking an order, under General Statutes § 52-422,[2] permanently enjoining arbitra-

---

[1] Only the named defendant, Northeast Corridor Foundation, participated in this appeal.

[2] General Statutes § 52-422 provides in relevant part: "At any time before an award is rendered pursuant to an arbitration under . . . chapter [909], the superior court for the judicial district in which one of the parties resides or, in a controversy concerning land, for the judicial district in which the land is situated or, when said court is not in session, any judge thereof, upon application of any party to the arbitration, may make forthwith such order or decree, issue such process and direct such proceedings as may be necessary to protect the rights of the parties pending the rendering of the award and to secure the satisfaction thereof when rendered and confirmed."

tion between the parties or, alternatively, an order, under § 52-422, enjoining the arbitration panel (panel) from hearing expert testimony offered by the defendants. The trial court dismissed the plaintiff's action for lack of subject matter jurisdiction, and the plaintiff appealed.[3] We conclude that the trial court had subject matter jurisdiction to entertain the plaintiff's action. We also conclude, however, that the plaintiff is not entitled to relief under § 52-422.

The following facts and procedural history are relevant to our resolution of this appeal. In 1998, Vincent Douthwright and Sandra Douthwright filed an action (Douthwright action) against the plaintiff and the defendants for injuries that Vincent Douthwright had sustained at a construction site. The Douthwrights reached a settlement with the parties, who thereafter agreed to submit to binding arbitration "all questions" relating to the allocation of liability arising from the Douthwright action. The arbitration agreement provided, inter alia, that "[c]ounsel for the respective parties will supply expert disclosures by July 1, 2002, which disclosures shall comply with the requirements of [Practice Book §] 13-4 (4),"[4] and that "[e]ach party shall conduct and

---

[3] The plaintiff appealed from the judgment of the trial court to the Appellate Court, and we transferred the appeal to this court pursuant to General Statutes § 51-199 (c) and Practice Book § 65-1.

[4] Practice Book § 13-4 provides in relevant part: "Discovery of facts known and opinions held by experts, otherwise discoverable under the provisions of Section 13-2 and acquired or developed in anticipation of litigation or for trial, may be obtained only as follows . . .

"(4) In addition to and notwithstanding the provisions of subdivisions (1), (2) and (3) of this rule, any plaintiff expecting to call an expert witness at trial shall disclose the name of that expert, the subject matter on which the expert is expected to testify, the substance of the facts and opinions to which the expert is expected to testify, and a summary of the grounds for each opinion, to all other parties within a reasonable time prior to trial. Each defendant shall disclose the names of his or her experts in like manner within a reasonable time from the date the plaintiff discloses experts, or, if the plaintiff fails to disclose experts, within a reasonable time prior to trial. If disclosure of the name of any expert expected to testify at trial is not made in accordance with this subdivision, or if an expert witness who

complete all expert witness depositions by October 15, 2002 . . . ." The arbitration agreement also provided that all "parties agree that the arbitrators shall consider their appointment and their chief duties under this agreement an honorable engagement rather than merely a legal obligation. However, the arbitrators will apply Connecticut law to all substantive legal issues and will follow Connecticut rules of procedure and evidence unless otherwise agreed to by the parties . . . ."

On June 20, 2002, at the defendants' request, the parties stipulated to an extension of thirty days, until July 31, 2002, for the disclosure of experts. On July 25, 2002, the defendants again contacted the plaintiff and requested an additional "couple of weeks" to disclose their experts. The plaintiff expressed no objection to that request.[5] The defendants disclosed the identity of their experts on August 26, 2002. The plaintiff's expert

is expected to testify is retained or specially employed after a reasonable time prior to trial, such expert shall not testify if, upon motion to preclude such testimony, the judicial authority determines that the late disclosure (A) will cause undue prejudice to the moving party; or (B) will cause undue interference with the orderly progress of trial in the case; or (C) involved bad faith delay of disclosure by the disclosing party. Once the substance of any opinion or opinions of an expert witness who is expected to testify at trial becomes available to the party expecting to call that expert witness, disclosure of expert witness information shall be made in a timely fashion in response to interrogatory requests pursuant to subdivision (1) (A) of this rule, and shall be supplemented as required pursuant to Section 13-15. Any expert witness disclosed pursuant to this rule within six months of the trial date shall be made available for the taking of that expert's deposition within thirty days of the date of such disclosure. In response to any such expert disclosure, any other party may disclose the same categories of information with respect to expert witnesses previously disclosed or a new expert on the same categories of information who are expected to testify at trial on the subject for that party. Any such expert or experts shall similarly be made available for deposition within thirty days of their disclosure. Nothing contained in this rule shall preclude an agreement between the parties on disclosure dates which are part of a joint trial management order."

[5] The plaintiff acknowledges that its failure to object to this second request for an extension of time to disclose experts constituted its acceptance of that request.

disclosure was limited to the disclosure that it had made in connection with the Douthwright action.

In ensuing communications with the panel, the plaintiff asserted that the defendants had failed to identify their experts in a timely manner and, consequently, were barred from adducing any expert testimony during the arbitration proceeding. The defendants maintained that their expert disclosure was timely and, furthermore, that the plaintiff's disclosure was insufficient. After the parties were unable to resolve their dispute, the panel, over the plaintiff's objection, issued a ruling requiring both parties to make expert disclosure in accordance with Practice Book § 13-4 (4) on or before January 1, 2003. The panel also required that all expert witness depositions be completed by March 1, 2003.[6]

On January 17, 2003, the plaintiff commenced this action seeking an order, under § 52-422, permanently enjoining arbitration of the parties' dispute regarding the allocation of liability arising out of the Douthwright

[6] The panel's memorandum of decision regarding the parties' discovery dispute provides in relevant part: "The . . . panel's . . . discovery rulings [are] based upon authority granted to the panel by the arbitration agreement and the Connecticut rules of practice.

"Paragraph 11 of the arbitration agreement confirms the parties' agreement that 'the arbitrators shall consider their appointment and their chief duties under this agreement an honorable engagement rather than merely a legal obligation.' The panel understands . . . 'honorable engagement' to obligate it to decide issues which come before it in accordance with principles of good faith and equity. While the parties also make clear that the panel's discretion is circumscribed by the its obligation to apply Connecticut substantive law and 'the Connecticut rules of procedure and evidence,' and while paragraph 13 of the arbitration agreement makes specific reference to expert disclosures pursuant to § 13-4 (4) of the Practice Book, the panel believes that principles of good faith and equity permit it to rely in its construction of the obligation imposed by paragraph 13 of the arbitration agreement and § 13-4 (4) of the Practice Book on § 1-8 of the Practice Book, which provides as follows: 'the design of these rules being to facilitate business and advance justice, they will be interpreted liberally in any case where it shall be manifest that a strict adherence to them will work surprise or injustice.' "

action or, alternatively, enjoining the arbitration panel from hearing any expert testimony offered by the defendants. In support of its claim for injunctive relief, the plaintiff argued that the panel's ruling extending the deadline for the disclosure of experts until January 1, 2003, was arbitrary and in excess of its authority.[7] The defendant filed a motion to dismiss the action for lack of subject matter jurisdiction, claiming that § 52-422 does not provide a jurisdictional basis for judicial review of an interlocutory ruling by an arbitration panel. The trial court granted the defendant's motion, concluding that § 52-422 cannot "be used as the jurisdictional basis for the review of an interlocutory ruling by an arbitration panel" because "the very purpose of arbitration [would] be impermissibly frustrated if [such] interlocutory matters [were] subject to court review as they occur." This appeal followed. Although we agree with the plaintiff that the trial court improperly dismissed the action for lack of subject matter jurisdiction, we conclude that the plaintiff cannot prevail on the merits of its claim.

"Jurisdiction of the subject-matter is the power [of the court] to hear and determine cases of the general class to which the proceedings in question belong." (Internal quotation marks omitted.) *Esposito* v. *Specyalski*, 268 Conn. 336, 348, 844 A.2d 211 (2004). In other words, "[s]ubject matter jurisdiction involves the authority of a court to adjudicate the type of controversy presented by the action before it. . . . A court does not truly lack subject matter jurisdiction if it has competence to entertain the action before it. . . . Once

---

[7] According to the plaintiff, the panel "arbitrarily rewrote or reformed the contract between the parties by changing the deadline by which the parties were to supply expert disclosures . . . .

\* \* \*

"In the contract, the parties did not confer upon the arbitration panel any discretion to rewrite the terms of the contract. In rewriting the parties' contract, the . . . panel exceeded the scope of its authority."

it is determined that a tribunal has authority or competence to decide the class of cases to which the action belongs, the issue of subject matter jurisdiction is resolved in favor of entertaining the action. . . . It is well established that, in determining whether a court has subject matter jurisdiction, every presumption favoring jurisdiction should be indulged." (Citations omitted; internal quotation marks omitted.) *Amodio* v. *Amodio*, 247 Conn. 724, 727–28, 724 A.2d 1084 (1999). Finally, "[w]e have long held that because [a] determination regarding a trial court's subject matter jurisdiction is a question of law, our review is plenary." (Internal quotation marks omitted.) *State* v. *Alexander*, 269 Conn. 107, 112, 847 A.2d 970 (2004).

"An application for an order pendente lite pursuant to § 52-422 is a special statutory proceeding. The statute confers a definite jurisdiction upon a judge and it defines the conditions under which such relief may be given . . . . In such a situation jurisdiction is only acquired if the essential conditions prescribed by statute are met. If they are not met, the lack of jurisdiction is over the subject-matter and not over the parties." (Internal quotation marks omitted.) *Goodson* v. *State*, 232 Conn. 175, 180, 653 A.2d 177 (1995).

General Statutes § 52-422 provides in relevant part: "At any time before an award is rendered pursuant to an arbitration . . . the superior court . . . may make forthwith such order or decree . . . as may be necessary to protect the rights of the parties pending the rendering of the award and to secure the satisfaction thereof when rendered and confirmed." In the present action, the plaintiff, a party to an arbitration proceeding in which an award had not yet been rendered, alleged that injunctive relief was "necessary" to protect its rights pending the rendering of an award. Accordingly, the allegations of the complaint satisfied the essential conditions of § 52-422. The trial court, therefore, had

the power—that is, it had subject matter jurisdiction—to adjudicate the plaintiff's claim.

"Although related, the court's authority to act pursuant to a statute is different from its subject matter jurisdiction. The power of the court to hear and [to] determine, which is implicit in jurisdiction, is not to be confused with the way in which that power must be exercised in order to comply with the terms of the statute." (Internal quotation marks omitted.) *Fusco* v. *Fusco*, 266 Conn. 649, 652, 835 A.2d 6 (2003). Under § 52-422, a trial court is empowered to grant injunctive relief during an ongoing arbitration proceeding only when such relief is "necessary" to protect the rights of a party prior to the rendering of an award. Conversely, if such relief is not "necessary" to protect a party's rights during the pendency of the arbitration proceeding, the trial court is not authorized to grant relief under § 52-422.

The term "necessary" is not defined either in § 52-422 or elsewhere in chapter 909 of the General Statutes, which is entitled "Arbitration Proceedings." See generally General Statutes §§ 52-408 through 52-424. "In the absence of a statutory definition, words and phrases in a particular statute are to be construed according to their common usage. E.g., *Verna* v. *Commissioner of Revenue Services*, 261 Conn. 102, 109–10, 801 A.2d 769 (2002); see General Statutes § 1-1 (a).[8] To ascertain that usage, we look to the dictionary definition of the term. E.g., *State* v. *Rivera*, 250 Conn. 188, 200 n.12, 736 A.2d 790 (1999)." *State* v. *Sandoval*, 263 Conn. 524, 552, 821 A.2d 247 (2003). Webster's Third New International Dictionary defines the term "necessary" as "[something]

[8] General Statutes § 1-1 (a) provides: "In the construction of the statutes, words and phrases shall be construed according to the commonly approved usage of the language; and technical words and phrases, and such as have acquired a peculiar and appropriate meaning in the law, shall be construed and understood accordingly."

that cannot be done without: that must be done or had: absolutely required: essential, indispensable . . . ."

We reasonably cannot conclude that judicial intervention was "absolutely required" to protect the plaintiff's rights during the pendency of the arbitration proceeding. On the contrary, the parties' disagreement regarding the disclosure of experts was nothing more than a run-of-the-mill discovery dispute, the resolution of which had been reserved, under the parties' agreement, to the sound discretion of the panel. See footnote 6 of this opinion. In such circumstances, there simply is no basis on which to conclude that the injunctive relief sought by the plaintiff pursuant to § 52-422 was essential or indispensable to safeguard its rights regarding such disclosure.

The fact that the legislature has authorized judicial intervention under § 52-422 only in extraordinary circumstances is fully consistent with, if not mandated by, the strong public policy favoring arbitration. "Arbitration is [a] favored [method of dispute resolution] because it is intended to avoid the formalities, delay, expense and vexation of ordinary litigation." (Internal quotation marks omitted.) *L & R Realty* v. *Connecticut National Bank,* 246 Conn. 1, 11, 715 A.2d 748 (1998). Unless a party to an arbitration proceeding affirmatively can establish that its rights will be lost irretrievably in the absence of judicial intervention, permitting that party to obtain interlocutory judicial review of an unfavorable ruling by an arbitration panel would seriously undermine the essential purpose of arbitration, namely, to avoid the expense and delay of litigation. Thus, although the trial court had subject matter jurisdiction to entertain the plaintiff's action, the plaintiff's assertion of harm falls far short of the showing necessary to

warrant judicial intervention under § 52-422.[9] The plaintiff's claim for injunctive relief, therefore, must be denied on the merits.

The form of the judgment is improper, the judgment is reversed and the case is remanded with direction to render judgment for the defendants on the merits of the plaintiff's claim for injunctive relief.

In this opinion the other justices concurred.

___

[9] The plaintiff contends that we should not address the merits of its claim for injunctive relief because the trial court never reached that issue in light of that court's determination that it lacked subject matter jurisdiction over the plaintiff's action. We disagree. As we have explained, the plaintiff is not entitled to prevail on its claim for injunctive relief under § 52-422 as a matter of law. Under the circumstances, therefore, considerations of judicial economy militate strongly in favor of our resolution of that issue. See, e.g., *State* v. *Angell*, 237 Conn. 321, 330, 677 A.2d 912 (1996).